Argued February 5, affirmed March 2, 1960
# WILCOX *v.* ALEXANDER ET UX
349 P. 2d 862

*Dennis L. Marvin,* Bend, argued the cause for appellant. On the brief were McKay, Panner & Marvin, Bend.

*Robert L. Dressler,* Portland, argued the cause for respondents. With him on the brief were E. J. Buhlinger and Buhlinger & Dressler, Portland.

Before McAllister, Chief Justice, and Lusk, Sloan and Duncan, Justices.

SLOAN, J.

This is an adoption proceeding. The trial court awarded a decree of adoption and the objector appeals. The parties involved, their relationship and identity follows.

The objector, Gordon Wilcox, and the petitioner, Anita M. Alexander, were married in August, 1938. On January 1, 1940, Carol Louene Wilcox was born to them; on August 3, 1941, Beverly Jean Wilcox was born and on December 15, 1944, Steven Richard became the third child of this marriage. In 1952 the then

Mrs. Wilcox, now Mrs. Alexander, obtained a decree of divorce from Gordon Wilcox and custody of all three children. The decree, entered by the circuit court for Deschutes county, required Wilcox to contribute $100 per month for the support of the three children and granted to him privileges of visitation. In 1954 the petitioners, Anita Alexander and Lucien B. Alexander, were married. In September, 1957, the petitioners filed a petition in the domestic relations department of the circuit court of Multnomah county seeking the adoption of all three children. Wilcox filed objections. Thereafter the court determined that the original petition did not state jurisdictional facts and the court allowed petitioners time to amend. The amended petition will be later mentioned.

Two hearings were held before the Honorable Donald E. Long. One in February, 1958, and the second not until July 31, 1958. The two girls, Carol and Beverly, testified in open court at the first hearing. They emphatically stated that they wanted the adoption to be allowed. The boy testified in chambers at the second hearing in a manner later described. There is no indication that the attitude of the girls had changed in the interval between the two hearings. The court awarded petitioners a decree by which the two older children, Carol and Beverly, were adopted by petitioners. The adoption was refused for the boy, Steven. This appeal by the objector followed.

It will illuminate the issues and the evidence to set forth the pertinent statute before proceeding further. The jurisdiction of the court to consider the adoption was governed by ORS 109.324. Prior to the 1957 legislative assembly, some of the provisions now found in ORS 109.324 were contained in ORS 109.320. Chapter 710, Oregon Laws 1957, repealed ORS 109.320 and en-

acted chapter 710 in its place. Section 7 of chapter 710 became codified as ORS 109.324. Because the added provisions contained in the 1957 act are important in deciding this case we will set forth the statute as it appeared both before 1957 and after. Subsection (6) of ORS 109.320, the statute as it was before 1957, read:

"If either parent is insane or imprisoned in the state prison under a sentence for a term not less than three years or has willfully deserted and neglected to provide proper care and maintenance for the child for one year next preceding the time of filing the petition for adoption, the court shall proceed as if such parent were dead, and in its discretion may appoint some suitable person to act in the proceedings as next friend of the child to give or withhold the consent mentioned in subsection (1) of this section."

ORS 109.324, which governs this case, reads:

"Consent where parent has deserted or neglected child. If either parent is believed to have wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption and such parent does not consent in writing to the adoption, there shall be served upon such parent a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. Upon hearing being had, if the court finds that such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent. In determining whether the parent has wilfully deserted or neglected without just and

sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions. This section does not apply where consent is given in loco parentis under ORS 109.316 or 109.318. [1957 c. 710 § 7 (ORS 109.312 to 109.329 enacted in lieu of ORS 109.320)]"

It is also well to note that the 1957 act also added ORS 109.305 which requires that:

"The rule that statutes in derogation of common law are to be strictly construed does not apply to the adoption laws of this state. [1957 ch. 710 § 15]"

The first issue presented by the appeal challenges the jurisdiction of the trial court to award a decree of adoption in the absence of the consent of Wilcox as a parent. The question presented, however, is part and parcel of the determination of the case on the merits. The issue comes about in this way: The trial court refused to consider the original petition because it failed to state any of the jurisdictional facts required by ORS 109.324. The amended petition, therefore, alleged that the objector, Wilcox, as a natural parent of the children, "has willfully deserted and has neglected without just and sufficient cause to provide care and maintenance for the said children for more than one year next preceding the filing of this Amended Petition and for more than one year next preceding the filing of the original petition herein for adoption by petitioners." This allegation is, of course, substantially in the language of ORS 109.324. It was never seriously contended, however, that Wilcox had deserted the children. The only question was his failure to support.

Throughout the hearings Judge Long constantly reminded the parties that he could not allow a decree

at all unless the jurisdictional fact of a failure by Wilcox to provide care and maintenance without just cause was established. In other words, this case was decided by the trial court on the theory that the jurisdiction of the court to determine the matter, without the consent of Wilcox as a natural parent, could only be gained by showing a neglect to support without just cause on the part of Wilcox for at least a year prior to the filing of the petition. The same facts which decided jurisdiction were substantially decisive in deciding if the adoption should be granted.

The 1957 statute gave the courts greater latitude in allowing an adoption over the objections of a nonconsenting parent. It is, of course, significant that to overcome nonconsent it was no longer necessary to prove both wilful desertion *and* neglect to support. This was the criteria required before the 1957 act. *Omlie et ux v. Hunt,* 211 Or 472, 316 P2d 528 (1957). The 1957 act now allows the court to proceed when either wilful desertion or neglect to support without cause is established. The opinion in Omlie, 211 Or at 474, recognized the change in the statute but did not apply it. The former statute governed that case.

This explains the conclusion of the trial court, before mentioned, that he was only obliged to find a failure to support without just and sufficient cause, and not desertion, in order to sustain his jurisdiction to grant or withhold adoption.

The parties here are not certain that the word "wilful" in the statute applies to both "deserted" and "neglected without just and sufficient cause to provide care . . .".

■ We think it is immaterial. The requirement that the nonsupport must be without "just and sufficient

cause" denotes an equivalent, if not broader, stricture than "wilful". No court would allow an adoption for nonsupport only unless the failure to provide was by intentional, deliberate or wilful design. The language of ORS 109.324 requiring the nonsupport to be "without just and sufficient cause" is identical to the language of ORS 167.605 which makes it a crime to fail to support a wife or child "without just and sufficient cause." It is apparent, therefore, that the legislature intended that the nonsupport be of the same wilful or deliberate character as that defined in the criminal code. See *State v. Francis,* 126 Or 253, 268, 269 P 878 (1928).

██ In the instant case the failure of Wilcox to support was intentional. This was manifest by his own testimony and by letters in evidence that he had written. It appears that during the two years prior to filing of the petition for adoption he had contributed no more than $100. The reason he assigned for the failure was the displeasure, or anger, he felt towards his former wife, Mrs. Alexander, for not permitting him to visit the children or to permit the children to visit him. Therefore, the trial court heard considerable evidence about the visitation problem. The trial court found, and we concur, that the matter of visitation was no excuse for his deliberate refusal to contribute to the care of his children. At the conclusion of the hearing, when the subject of support had been an important consideration, the following occurred:

"THE COURT: Is there something you want to say?

"MR. WILCOX: Could I say I buy all my lunches and breakfasts? I don't have breakfast and lunch at home. [This was apparently said to the court to explain the use Wilcox made of his

earnings. Wilcox was not a witness at the time. The statement was volunteered from wherever Wilcox was seated in the courtroom.]

"THE COURT: Why don't you have breakfast at home?

"MR. WILCOX: I just have coffee, which I make myself.

"THE COURT: Why don't you take your lunch, if you can't pay for the support of the children?

"MR. WILCOX: I really don't think I should be required to. If I could go back to court the Judge wouldn't insist on it when I haven't been able to see them.

"THE COURT: Your attorney would certainly advise you differently.  *  *  *"

We cannot say that the trial court abused the discretion allowed by ORS 109.324 when the court decided to "proceed regardless of the objection of such parent."

Much the same evidence in respect to the problems of visitation and support was pertinent in deciding the merits of this petition for adoption.

There is no occasion to detail the evidence in respect to the problems this divided family encountered in arranging visits between Wilcox and the children. The record in this adoption proceeding is persuasive that Wilcox used the best means available to him to estrange the two daughters, Carol and Beverly, to the extent that they refused to visit with Wilcox or to see him except when forced to do so. About a year or so after the divorce, when the girls were then about 12 and 13 years old, they went to the home of Wilcox for a planned two weeks visit. The girls' testimony in respect to the visit stands uncontradicted. No sooner did they arrive for the visit than Wilcox started abus-

ing the girls' mother. This continued for several days until the girls could no longer conceal their feelings. Some form of altercation occurred which caused the girls to go to the home of a neighbor and send word to their mother to come after them. The planned two weeks visit lasted ten days and the girls never again voluntarily visited him.

At the time the two girls testified in this proceeding Carol was 18 and a senior in high school, Beverly was 17 and a junior. The trial judge, himself, carefully questioned each girl with respect to her understanding of the adoption proceeding as well as to her feeling for Wilcox. Each girl testified that on the occasion of every visit Wilcox continued to berate and demean their mother to the extent that they could not tolerate his company. A letter, in evidence, that Wilcox wrote to Carol in August, 1957, lends verification to the girls' testimony. The tone of the letter would definitely not create any sense of affection or respect. It attempted to open the same old sores the girls, and the other witnesses, testified that Wilcox attempted to reopen every time he had the opportunity.

It appears unfortunate, but true, that even years after the events complained of, and after his own satisfactory marriage, Wilcox continued to harass his former wife, either directly to her or indirectly through the two girls. He professed great affection for the girls and an urgent desire to see them and have them come to his home. It is possible to believe, however, that the desire to talk with or visit the girls was prompted by an urge to use them as a means of satisfying the grudge he felt for their mother. The letter we have previously mentioned, written in 1957, reflects such an attitude.

From the date of the divorce through the time covered by this record, Wilcox filed three motions with the circuit court for Deschutes county, where the divorce was granted, asking that court to hold Mrs. Alexander in contempt and force certain visitation times upon her and the children. The last of these proceedings was filed after the petition for adoption was filed. The record reflects that only one of these motions resulted in a hearing before the court which granted the divorce. That court refused Wilcox's demands.

Wilcox contended that Mrs. Alexander had turned the girls against him. The evidence does not sustain his argument. It is easier to believe that his own conduct was the predominate cause of the contempt the two girls held for him. This is also made apparent from the testimony of the youngest child, the son, Steven Richard.

Recall that the decree of adoption did not include that child. At the time of the last hearing he was about 14 years old. At the conclusion of the formal hearing, and by stipulation of the parties, the trial judge and respective counsel talked with the boy in chambers, absent the parties. In response to understanding questions by the court the boy stated that his mother had never expressed to him any lack of respect or ill-feeling for Wilcox. The boy also said that Wilcox had never said anything "unkindly" about his mother to him. The boy expressed affection for his natural father and uncertainty as to whether he wanted to be adopted by Alexander. He enjoyed his visits with his father and wanted to continue them, even if the adoption were allowed. The written record would cause us to believe the statements made by the boy. It appears to have been convincing to the trial judge.

We must recognize, as did the trial judge, that the two girls have now reached an age of maturity, shortly majority, which makes it impossible for any court to order filial respect or that anything other than a legal parent and child relationship continue. True, the court can refuse to sever the legal ties. But that refusal could not restore to this unfortunate man the affection or respect his own conduct has irretrievably lost to him.

██ The record has been examined with care. In the final analysis, however, we must be much guided by the findings of the able trial judge. In matters of this nature, involving the most basic human values and emotions, the character of the witness and the meaning of his testimony can best be gleaned from the demeanor and apparent sincerity of the witness. It is a close case and, being so, we must and do rely heavily on the experience and ability of the judge who tried this case. See opinion in *Perley v. Perley,* decided February 24, 1960, 220 Or 399, 349 P2d 663.

Affirmed.