Argued November 1, affirmed December 27, 1971, petition for
rehearing denied January 26, petition for review
denied April 25, 1972

IN THE MATTER OF THE ADOPTION OF CARMEN MARIE
DRAKE, A MINOR.

DRAKE ET UX, *Appellants, v.* DRAKE (No. 3317),
*Respondent.*
491 P2d 1203

*Richard E. Miller,* Eugene, argued the cause for appellants. With him on the brief were Miller, Moulton & Andrews, Eugene.

*Paul D. Clayton,* Eugene, argued the cause for respondent. With him on the brief were Luvaas, Cobb, Richards & Fraser, Eugene.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

THORNTON, J.

This appeal is from the denial of a petition to adopt Carmen Marie Drake, a minor child. The petition was filed on July 2, 1968, by Grover and Tessie Drake, the paternal grandparents of the child. The child's father, Ronald Drake, consented to the adoption, but the mother, Susan Drake, withheld her consent and contested the petition.

The question on appeal is whether the criteria of ORS 109.324 have been met, thereby obviating the necessity of obtaining approval of the nonconsenting parent to the adoption. The relevant part of ORS 109.324 provides that the consent of the parent is not

required where "such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption * * *."

The mother was court-committed to Oregon State Hospital from May 7 until August 1, 1965, for treatment of a mental disorder. The father left the mother in the fall of 1966 shortly before she was again hospitalized because of emotional problems. This time she remained from November 3 until December 15, 1966. Carmen was born on December 4, 1966. She was taken by the father to the home of the petitioners in Eugene, where he was then living.

Carmen has lived with the petitioners continuously since her birth. Her financial support has been provided solely by petitioners. The mother has never been asked to contribute to her support.

Carmen is the fourth of five children born to the Drakes. On January 24, 1967, the father was awarded custody of Carmen, with her care entrusted to the petitioners. Susan was given custody of their other three children.

From April 1967, when Ronald and Susan Drake were reconciled, until July 1967, when they moved to Idaho in order for the father to obtain employment, the mother showed little interest in seeing or caring for her daughter. The young couple resided near the petitioners for a month of this period and also lived with them for at least two weeks.

The couple lived together in Idaho from July 1967 until June 1969, when the mother returned to Eugene where she now resides. Their only contacts with the petitioners during the year next preceding

the petition for adoption were a phone call in January 1968 explaining that they had started for Eugene to visit in December but had been forced to turn back when their Jeep developed mechanical difficulties, and a letter from the mother to the petitioners in March or April 1968 stating that they were coming to Eugene to get Carmen.

When they were served with the petition for adoption, the father told the mother that petitioners could not adopt the child without their permission and that he would take care of the matter. The father went to Albany and retained counsel but never pursued the matter further. The attorney later resigned. The mother was never informed that the adoption was not being contested. As the petition for adoption was uncontested, it was granted on December 20, 1968.

The mother was again hospitalized for the treatment of her mental problems. She remained in Idaho State Hospital from October 3 until November 13, 1968. At the father's request the grandfather came to Idaho and took the other children back to Eugene. The father and mother visited the petitioners for two weeks at Christmas. Nothing was said about the adoption at this time. In June 1969 the father and mother again separated, and the mother returned to Eugene where her children were living with the petitioners. The mother filed a motion on November 12, 1969, requesting that the decree of adoption be vacated. Her grounds were that the decree had been taken against her through her mistake, inadvertence, surprise and excusable neglect. The decree was vacated on February 9, 1970. The trial involved here was held on December 1, 1970.

The father testified by deposition to the effect

that the mother was unable to care adequately for the children while they were in Idaho; that there had never been a time since the birth of Carmen when her mother was physically capable of caring for her; that his income was sufficient to provide for his family, including Carmen, if necessary; and that these funds were available to the mother had she wished to contribute to Carmen's support. The mother testified that her husband had not given her money and that their living conditions were substandard, their diet consisting mainly of potatoes.

The mother is still taking medication and attending group therapy sessions for the treatment of her mental condition.

The record shows that the mother has never furnished care, nurture and support for her daughter, Carmen, while the petitioners have provided a good home for her in every respect. However, ORS 109.324 requires a finding that the responsible parent has "wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child * * *."

"* * * The requirement that the nonsupport must be without 'just and sufficient cause' denotes an equivalent, if not broader, stricture than 'wilful'. * * *" *Wilcox v. Alexander et ux,* 220 Or 509, 514-15, 349 P2d 862 (1960).

We believe the decision of the trial court was legally correct for at least two reasons.

■ First, and most important, the mother's mental illness, which continued throughout the period in question here, precluded any finding of willful desertion. In *Moody v. Voorhies,* 257 Or 105, 475 P2d 579 (1970), our Supreme Court, in denying a petition

for adoption based on alleged wilful desertion, held that the father's mental illness precluded a finding of willful desertion because his mental illness was not a volitional act.

Secondly, and with reference to the separate issue of alleged failure to support the child, petitioners failed to sustain their burden of showing by a preponderance of the evidence that the mother had "wilfully * * * neglected without just and sufficient cause to provide proper care and maintenance for the child for one year * * *."

■ In order for failure to support to justify a finding of neglect "without just and sufficient cause" the nonsupport must be intentional. *Wilcox v. Alexander et ux,* supra; *State ex rel Juv. Dept. v. Draper,* 7 Or App 497, 491 P2d 215 (1971) Sup Ct *review denied* (1972).

Here once again the mother's prolonged mental illness raises a serious question, which we need not pass upon at this time, as to whether any failure to support on her part could be willful and intentional.

■ Failure to support, standing alone, is insufficient to establish desertion or willful neglect. *Omlie et ux v. Hunt,* 211 Or 472, 316 P2d 528 (1957). *See also Smith v. Green,* 4 Or App 533, 480 P2d 437 (1971). *Cf. State ex rel Juv. Dept. v. Draper,* supra.

■ The record in this case shows that the care of Carmen had been entrusted to her father and petitioners by court order on January 24, 1967. Unlike the defendant father in *Draper,* here the mother knew at all times where the child was and that she was receiving excellent care. The evidence concerning the mother's failure to support was conflicting. After re-

viewing the testimony, we agree with the trial judge's conclusion that petitioners failed to establish by the required preponderance of the evidence that the mother was financially able to have contributed to the child's support during the period in question.

While the mother's failure to provide care, nurture and support constituted some evidence of both desertion and neglect, the record supports the trial court's finding that her failure was not willful, but rather the result of circumstances beyond her control.

Nothing herein shall be construed to affect any existing court order providing for the custody or care of Carmen Marie Drake or to imply that the parents, or either of them, shall have physical custody of said minor child.

Affirmed.