Argued February 28, affirmed April 16, 1973

IN THE MATTER OF THE ADOPTION OF RONA RACHELLE DUNNE, A MINOR, AND KATRINA SUE DUNNE, A MINOR.

DUNNE ET UX, *Respondents, v.* McCASHUM, *Appellant.*

508 P2d 821

*William J. Storie,* Pendleton, argued the cause for appellant. On the brief was Ralph Currin, Pendleton.

*Dwight P. Billman,* Salem, argued the cause for respondents. With him on the brief were Billman & Coleman, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

THORNTON, J.

The natural mother of two minor children appeals from a decree which allowed the adoption of those children despite the mother's objection.

The petitioners, the natural father of the children and his present wife, sought the adoption. The natural mother objected, but the trial court found that her consent was not a prerequisite to the adoption pursuant to ORS 109.324. The trial court then granted the adoption to the petitioners.

In pertinent part, ORS 109.324 provides:

"\* \* \* Upon hearing being had, if the court finds that such [objecting] parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent \* \* \*."

The trial court found that, although the mother had not "wilfully deserted" the two children, she had

"neglected without just and sufficient cause to provide proper care and maintenance" for them. On appeal, the mother challenges this finding. She contends that the evidence did not prove "neglect" under ORS 109.324, and that, therefore, the court was without jurisdiction to allow the adoption.

The petitioners filed for adoption on April 28, 1971. They filed an amended petition on August 17, 1971. The adoption concerns two minor children, Rona Dunne, born August 22, 1963, and Katrina Dunne, born January 8, 1965. The natural father and mother were married in 1962 and divorced in 1966. The divorce decree awarded the temporary custody of the children to county juvenile authorities, who then put the children into a foster home. The decree also gave both parents a right to reasonable visitation with their children, subject to the supervision of the juvenile authorities; and provided that the father was required to pay $150 a month for their support. The mother was not required to make any contribution to the support of the children.

Both the father and mother attended the divorce proceeding and knew of the placement of their children. The mother accompanied the children when they first went to the foster home.

Later in 1966, the father's brother, William Dunne, obtained temporary custody of the children. The order allowing this change of custody was entered in the same court as that which granted the divorce. The order recites that county juvenile authorities notified the natural mother of the hearing on the change of custody, but that she failed to appear. The children remained in the home of William Dunne until December 1967.

Although the mother did not attend the hearing on the 1966 custody change, she did know that the children were with William Dunne. Nonetheless, during this period the mother did not visit the children, although she was living in Mt. Vernon, Oregon, approximately 200 miles southeast of Portland, and the children were in Portland. The mother did, however, phone or write to the children once or twice.

The mother testified that while the children were in Portland she had driven there "several times" to see them, but then did not because of the emotional strain.

In December 1967 the children went to live with their father and his present wife in Salem. This change of custody was informal, but the record shows that such change had the approval of supervising juvenile authorities. In October 1969 petitioners were officially awarded custody of the children. Again, the order awarding custody to the petitioners was entered in the same court which had granted the divorce between the natural parents, and which had given custody of the children to William Dunne.

The mother did not visit the children in Salem until the summer of 1971, which was after she received notice of the filing of the adoption petition. During the period from 1967 to 1971 she also never phoned or wrote to the children, and she did not send any presents or cards to them on their birthdays or other holidays. The mother remained in Oregon until March 1969 when she remarried and moved to California, where she and her present husband now reside.

It appears from the record that the mother may not have been aware of the custody transfer of 1967 when the children left Portland and were moved to

Salem by their father. The 1969 order, awarding custody to the father and his wife, simply recites that the mother's location was then unknown. However, the record demonstrates that the mother could have easily found the children any time during this period from December 1967 to 1971. County juvenile authorities, relatives and the William Dunnes all knew where the children were. Yet, from December 1967 until after the filing of the adoption petition, the mother apparently never sought to locate the children, or to determine that they were receiving adequate care.

The mother contends that these facts do not establish that degree of neglect required by ORS 109.324.

■ In *State ex rel Juv. Dept. v. Christy,* 7 Or App 608, 492 P2d 476 (1972), this court held that under the new juvenile code a juvenile court may exercise jurisdiction over children notwithstanding determination of their custody by a prior divorce decree so long as statutory prerequisites for such jurisdiction are met.

■ Neglect, to be "without just and sufficient cause," must be "intentional, deliberate or wilful." *Wilcox v. Alexander et ux,* 220 Or 509, 515, 349 P2d 862 (1960). That is, the failure to provide support and care must be voluntary and knowing.

The cases do not precisely delineate the quantum, or type of neglect which will satisfy the statute and obviate the necessity of obtaining the parent's consent to the adoption. Such an accurate definition is probably impossible.

■ Under our statute a petitioner is not required to prove that the respondent parent intended to abandon all parental rights. *See, State ex rel Juv. Dept. v. Draper,* 7 Or App 497, 491 P2d 215 (1971), Sup Ct *review denied* (1972). The cases focus on cer-

tain minimal expressions of concern, which, if present, indicate that the parent has not neglected the child within the meaning of ORS 109.324.

For example, this court has previously denied adoptions when the objecting parent has frequently visited the child, see *Eacret v. Dews,* 10 Or App 511, 500 P2d 481, Sup Ct *review denied* (1972), or where the parent *at least* knows who is keeping the child, and that the child is receiving adequate care. *See, State ex rel Juv. Dept. v. Mack,* 12 Or App 570, 507 P2d 1161 (1973); *Drake v. Drake,* 8 Or App 57, 491 P2d 1203 (1971), Sup Ct *review denied* (1972); *Smith v. Green,* 4 Or App 533, 480 P2d 437 (1971).

Here, at least from December 1967 on, the mother did not contact the children and did not check to ascertain the adequacy of their care. Whether she did or did not know that the children were in Salem with the petitioners, she made no effort to locate them. Thus, she could not have known whether the children were receiving adequate care.

The mother's conduct here falls below the minimum level of concern indicated above. She elected for almost five years to ignore her children. We note that, shortly after the divorce in 1966, relatives, including William Dunne's wife, offered to write to the mother and keep her advised as to the children's welfare. The mother responded to these offers for only some few months after the divorce. After that, letters to the mother went unanswered.

The mother claims that she did not visit the children because of emotional strain. She testified that she several times saw a psychiatric social worker in California in the first few months after the divorce. Yet, even at this time, the mother was working in

California, and the treatment ended by October 1966. The mother also testified that, at least, since her remarriage in 1969, two years before the filing of the adoption petition, she has felt capable of seeing and caring for the children. In any event, the mother did not demonstrate that her emotional problems were severe enough to render her neglect involuntary. *Cf., Moody v. Voorhies,* 257 Or 105, 475 P2d 579 (1970). *Drake v. Drake,* supra.

We hold that the mother's failure to visit her children for five years, her failure even to contact them for more than three years, her failure to locate them and check on their welfare constitute willful neglect under ORS 109.324.

The trial court, after finding that the mother's consent was not required, granted the adoption as being in the best interest of the children. The mother does not challenge this finding or the fitness of the petitioners to care for the children.

We have examined the record and agree with the trial court. The petitioners have had actual custody of the children since December 1967. Both of the petitioners expressed love and concern for the children. Nothing in the record suggests any inadequacy in the care they have provided for the children since 1967.

Affirmed.