Argued July 25, affirmed October 8, 1973

IN THE MATTER OF THE ADOPTION OF REBECCA JEAN
LINDER AND DOUGLAS ROBERT LINDER, MINORS.

MAHONEY ET UX, *Appellants, v.* LINDER,
*Respondent.*

514 P2d 901

*James C. Farrell,* Roseburg, argued the cause for appellants. With him on the brief were Washburn, Farrell & Spence, Roseburg.

*Donald A. Dole,* Roseburg, argued the cause for respondent. With him on the brief were Thomas W. Kolberg and Long, Neuner, Dole & Caley, Roseburg.

Before Schwab, Chief Judge, and Foley and Fort, Judges.

FORT, J.

This adoption proceeding was brought by the natural mother and stepfather of two minor children born to her and her former husband. The mother had been awarded the custody of the children in the divorce suit. The former husband filed an appearance objecting to the adoption. This proceeding was based on the alleged wilful failure of the father, without just and sufficient cause, to provide proper care and maintenance for the children for more than one year, and upon "wilful" desertion. ORS 109.324.[1]

---

[1] ORS 109.324 provides:

"If either parent is believed to have wilfully deserted or neglected without just and sufficient cause to provide proper

The trial court concluded that the showing required to establish either wilful desertion or wilful failure to support without just and sufficient cause had not been made and dismissed the petition. The mother and stepfather then appealed.

We note initially that the record here indicates some confusion concerning whether the father was represented by counsel in this matter, and, if so, by whom. At the time of the final hearing on the merits, counsel for the grandparents vigorously sought a continuance on the ground that the father did not have personal notice that the hearing on the merits was to be held on that—or any other—day. Counsel for petitioners took the position that the father was represented by the attorney who appeared for the grandparents. In view of the due process concern inherent in the question of notice of the hearing, we think it necessary to decide this question.

For an understanding of the problem, it is first necessary to set out portions of the transcript made

care and maintenance for the child for one year next preceding the filing of the petition for adoption and such parent does not consent in writing to the adoption, there shall be served upon such parent a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. Upon hearing being had, if the court finds that such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent. In determining whether the parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions. This section does not apply where consent is given in loco parentis under ORS 109.316 or 109.318."

on the day of the hearing on the merits, to-wit, August 30, 1972:

"MR. DOLE [counsel appearing on behalf of the objecting paternal grandparents]: Excuse me, I need to make a record. The court would normally ask counsel if you are ready and you did not. In that respect might I say that I at this point and time would like the record to show that I am here with the paternal grandparents, that for some period of time—and this is reflected in the welfare report—the father of these children, Robert Linder—we haven't known where he has been. He was located through various means—I learned of his whereabouts this morning at 11:45. He was in Quincy, California. This is the first opportunity he has had of any notice of the time and place of this hearing. It is with these circumstances—and I wish it understood by the court that I personally have not talked to Mr. Linder although I have placed phone calls since 11:45 on two occasions to the number that I have. I would like the record to show that I request the record to show that I would request a postponement until a later time.

"* * * * *

"MR. FARRELL [counsel for mother and step-father]: Your Honor, he may not have had notice of this hearing. It was through no fault of either Mr. Dole or the court. He wouldn't let anybody know where he was at.

"MR. DOLE: Actual notice is what it is. I had notice of this hearing.

"MR. FARRELL: This particular hearing here.

"MR. DOLE: And likewise I don't think he had actual notice of the prior hearing.

"* * * * *

"MR. DOLE: I understand what you are saying, but he has had no notice and opportunity to

be here today. I'm making my point that it's actual notice.

"THE COURT: Well, either you represent him or you don't, so I would have to ask you to state whether you do or don't.

"MR. DOLE: If you put the question to me that way, I do not. I have had no such contact, I filed the original documents on behalf of the grandparents in his interest, I think is the language I used. I have never personally discussed this matter with Robert Linder, Jr."

■ It is clear that if Mr. Dole represented Robert Linder, Jr., in this proceeding, notice to Mr. Dole of the time and place of the hearing was sufficient. ORS 16.800, 9.310, 9.320. The relationship between an attorney and client is that of principal and agent. *Lehman v. Knott*, 100 Or 240, 187 P 1109 (1920). No challenge under ORS 9.340 or ORS 9.350 is here made to Mr. Dole's authority.

The record shows that on February 17, 1972, a two-page document entitled "Petition" was filed in this proceeding. It was prepared on legal-size, numbered paper bearing thereon the imprint "Long, Neuner, Dole & Caley, Attorneys at Law," together with the firm's address. It set forth the reasons why, in the opinion of the father, Robert Linder, Jr., the adoption should not be granted. It was signed by him and acknowledged before a notary in California. Below the acknowledgment appears the following:

"I do hereby certify that I have this day served the foregoing document upon all parties of record in this proceeding by mailing a copy thereof, properly certified, addressed with postage prepaid, to the following parties or their attorneys of record. Dated: 2-17-72"

The certificate is signed "Donald A. Dole, of attorneys for Petitioner."

Prior to the date of the hearing on the merits, another hearing was held before the court. Both counsel were present, as were the mother and stepfather and the paternal grandparents. The father was not. The record reveals the following:

"MR. DOLE: Mr. Farrell raises the issue that Robert Linder, Jr., is not here. I believe my original petition states that I was appearing on his behalf. I guess to this extent my part of this stipulation, on the authority of his parents, I guess binds him to it to that degree, though the court should make note I have had no contact with Robert Linder, Jr.

"MR. FARRELL: The record should show that there was a petition filed by Robert L. Linder, Jr.

"THE COURT: Well, he has made an appearance here.

"MR. FARRELL: Wherein Mr. Dole represents him.

"* * * * *

"MR. DOLE: In any event, Mr. Farrell is correct. I think in the first petition I ostensibly say 'in behalf of him'."

At the time of the hearing on the merits Mr. Dole conceded that he had received proper notice of that hearing.

█ We conclude from the foregoing that Mr. Dole did appear as counsel in this matter on behalf of the father, Robert Linder, Jr. Thus, notice to Mr. Dole of the time and place of the hearing held in this proceeding was, under the foregoing authorities, binding upon the father. The court did not here abuse its discretion in refusing to grant the motion for con-

tinuance made on the morning of the trial. A litigant may not avoid the orderly processes of the law simply by failing to keep his attorney advised of his whereabouts. No showing was made here of any other reason which would support the request.

An examination of the facts is necessary to a determination of the issues presented.

Following the divorce in 1969, respondent father, at the instigation of his own parents, petitioned for and was granted visitation rights to have the children one weekend each month, every other holiday, plus two weeks in July, and Christmas Day until the end of the holiday season. The extent of his exercise of these rights is not clearly shown. It appears he lived with his parents during the first year following the divorce. The children stayed at their paternal grandparents' house several times during this year, and the grandfather testified he and respondent picked the children up.

During the first year following the divorce respondent became delinquent in his child support payments but brought them up-to-date through a bank loan co-signed by his father. The grandfather testified respondent failed to repay the full amount of the loan.

On July 1, 1969, the mother married her present husband and co-petitioner in this adoption proceeding. In July 1970, respondent and the grandparents took the children camping for a week at the coast. Respondent has neither seen his children nor contributed to their support since then.

On October 18, 1971, petitioners filed this petition for adoption of the children. Respondent, not having consented to the adoption, was cited by the petitioners

to show cause why the adoption should not be granted. Service of citation on respondent was initially had by publication. Later, personal service was eventually obtained. In the meantime the paternal grandparents filed an objection to the adoption.

Thereafter, on February 17, 1972, respondent father filed an objection to the adoption. He alleged therein:

"* * * That * * * Sally J. Mahoney by devious and insidious ways frustrated the visitation privileges afforded to me by creating difficult, hostile and adverse conditions concerning visitation privileges, and that the said Sally J. Mahoney and Ronald G. Mahoney advised me that they did not want me to visit the children, and that I should stay away, and that if I stayed away, refraining from exercising my visitation privileges, that they would make no claim for support. That because of the attitude and manifestations of the said Sally J. Mahoney and Ronald G. Mahoney and their requests, demands and threats, I refrained from exercising visitation and have, therefore, also not paid support. * * *"

On May 3, 1972, a hearing was held on the petition for adoption, at which time the respondent father did not appear. Pursuant to a stipulation between counsel for petitioners and counsel for the father and the grandparents, an order was entered directing the Children's Services Division to conduct an investigation into the matter of the adoption. It was further stipulated that the results of the investigation were to be received as evidence at the hearing on the merits. On August 30, 1972, another hearing was held, at which time the grandparents presented testimony in addition to the Children's Services Division report which had been received by the court

pursuant to the May 3 stipulation. The respondent did not appear at this proceeding, nor had he kept the court, his parents or his counsel advised of his whereabouts or how he could be contacted. The petitioning mother and stepfather offered no evidence and the mother did not take the stand at all. The stepfather was examined as an adverse witness called by respondent's counsel. The grandfather testified that the mother of the children had told him, "I told Bob [the children's father] if he would stay away, he could forget the child support." This testimony is uncontradicted.

The report of the Children's Services Division stated that the respondent had not had any contact with his children since July 1970, nor had he paid child support since that date. The report further stated that the petitioners were happy, well thought of, had a good reputation, a good standard of living, and a wholesome family life. It stated that the relationships between the stepfather and the children were excellent. It recommended that the adoption be approved as in the best interests of the children.

The trial court, in a 15-page memorandum, denied the petition for adoption on the grounds that petitioners had not proved the respondent had neglected or deserted the children within the meaning of ORS 109.324.

■■ The trial court also concluded that the grandparents did not have sufficient standing to contest the adoption nor were they entitled in this proceeding to the legal visitation rights which they had sought in their "petition." We agree. Our attention has been directed to nothing in the statutes which would support a conclusion that grandparents have status as

parties in an adoption proceeding. Nor is the question of visitation rights one that the court may properly consider in such a proceeding.

Petitioners contend that it is clear from the evidence that the best interests of the children would be served by allowing the adoption.

In *Moody v. Voorhies,* 257 Or 105, 109, 475 P2d 579 (1970),[2] the Supreme Court in reversing this court said:

> "*The best-interest-of-the-child rule,* as applied in determining custody, is applicable to adoptions, but it *cannot be considered without* the consent required by ORS 109.314, or by *a judicial determination that the necessity of consent is obviated by a judicial finding that the criteria of* ORS 109.322, or *ORS 109.324,* or ORS 419.523 *have been met.* [Citation omitted.]" (Emphasis supplied.)

The court relied primarily on *Simons v. Smith,* 229 Or 277, 281, 366 P2d 875 (1961). In that case, the Supreme Court said:

> "The best-interests-of-the-child standard has no similar relation to the issues presented in a proceeding to dispense with consent for an adoption. In an adoption, a court is asked to terminate every right and interest of the natural parent. Adoption goes far beyond the child-centered question of custody during minority. Indeed, the denial of an adoption petition has no necessary bearing on the physical custody of the child. The child's environment can be protected in a number of ways, under the divorce laws and the juvenile code. The petition to adopt concerns a different kind of right, the subjective tie between a parent and child, the right of a parent to be identified with his child for emotional, religious or other reasons. A father may

---

[2] 2 Or App 491, 469 P2d 642 (1970).

hope his son will bear his name; a mother may anticipate that her daughter will inherit her property. On the other hand, there is ordinarily no vital interest of the child which requires the termination of his parents' rights. The use of a convenient name, for example, need not require the formality of adoption. * * *"

■ The trial court correctly concluded that it could not consider the best interests of the children unless it first determined that the father had wilfully either deserted or neglected to provide proper care for his children without just and sufficient cause under ORS 109.324. It made no such finding here.

Additionally, petitioners contend that the court erred because it did not find that the father had wilfully deserted the children or, in the alternative, that he had wilfully neglected to provide proper care and maintenance within the meaning of ORS 109.324.

It was uncontradicted that during the one-year period in question the father had had no direct personal contact with the children, that he was absent from the state, and that he had contributed nothing to the support of the children, although the divorce decree required him to pay support.

■ The standards for determining a stepparent adoption petition are the same as those governing termination proceedings under ORS 419.523 (2) (b), *State ex rel Juv. Dept. v. Draper,* 7 Or App 497, 503, 491 P2d 215 (1971), Sup Ct *review denied* (1972). In *Simons v. Smith,* supra, 229 Or at 280-81, the Supreme Court also stated:

"The reason for terminating parental rights ought to be related to the parent's conduct as a parent. In their most palatable form, discretionary statutes require the trial judge to consider 'the best

interests of the child'. Courts which base their decisions on 'the best interests of the child' use that term as a term of art borrowed from divorce jurisprudence. Cf. cases collected in Annotation, 47 ALR2d 824. This rationale is unacceptable for several reasons.

"In divorce cases, the right of one parent to share child custody with the other becomes subordinate to the welfare of the child precisely because the divorce makes natural family life impossible. Since a child is not divisible, one parent must yield; and since it is the parents who have destroyed the natural habitat of the child, it is proper that the adverse effects of the divorce upon the child be minimized as much as possible. Thus, the court chooses the environment which is the more suitable for the child, or, more accurately, the less unsuitable for the child. This choice, moreover, is limited to the parents unless both are manifestly unfit. *Gustin v. Gustin*, 59 Or 226, 116 P 1072 (1911)."

■ The fact that respondent has not visited nor contributed to the support of his children since July 1970, standing alone, is insufficient to establish desertion or wilful neglect under ORS 109.324. *State ex rel Juv. Dept. v. Mack*, 12 Or App 570, 507 P2d 1161 (1973), and cases cited therein.

*Compare, State v. Sizemore*, 12 Or App 482, 506 P2d 502, Sup Ct *review denied* (1973), which involved criminal nonsupport. ORS 163.555® (formerly ORS 167.605).

---

® We emphasize that we are not here dealing with the sufficiency of the evidence to support a conviction of this father in a criminal nonsupport charge brought by the state. There the question, obviously, is whether or not the father has violated ORS 163.555, not as here, whether his conduct has been such as to authorize a court to terminate the parent-child relationship. In

■ It is undisputed that the father knew where the children were and that they were well cared for. Under these circumstances the "agreement"④ between respondent and petitioner mother to have him stay away and stop the support payments, we conclude, should not be used to terminate his parental rights. *State ex rel Juv. Dept. v Mack*, supra, 12 Or App at 574-75; *Drake v. Drake*, 8 Or App 57, 62, 491 P2d 1203 (1971), Sup Ct *review denied* (1972); *State ex rel Juv. Dept. v. Draper*, supra, 7 Or App at 507-508. *Cf., Dunne v. McCashum*, 13 Or App 66, 508 P2d 821 (1973).

When, as here, the failure to contribute to the support of the children, and the failure to exercise visitation rights during the required one-year period may reasonably be considered to be the result of the custodial parent's direct inducement to the non-custodial parent, we cannot say that the conduct here by the father was not without just and sufficient cause. The trial court so concluded. We agree.

---

State v. McMaster, 259 Or 291, 296-97, 486 P2d 567 (1971), the Supreme Court, in a proceeding to terminate parental rights under the juvenile code, ORS 419.523, pointed out:

"It is significant that the statute we are testing is in the juvenile code and not the criminal code or some other portion of our laws. While the juvenile code is administered by courts, the code directs the juvenile courts to act in some manners similar to a social administrative agency. Much of the code and much of the juvenile court's budget is devoted to the proper disposition of the child after the child comes within the court's jurisdiction. To adequately perform this function the legislature reasonably deemed it desirable to give the juvenile court greater flexibility than may be thought desirable for a court functioning in its criminal role."

④ We do not here consider whether such an "agreement" itself creates rights which are enforceable, nor whether such an arrangement is in other circumstances compatible with public policy. We consider it solely in the context of its effect under ORS 109.324 as constituting "just and sufficient cause" for the father's conduct here, and thus a barrier to the granting of the adoption petition.

Since the court may not, under the rule of *Simons* and *Moody,* consider the best interests of the children until after it has found that the parent has deserted or neglected without just and sufficient cause to provide proper care and maintenance as required by ORS 109.324, it follows from the foregoing that the order of the trial court should be affirmed.

Affirmed.