Argued September 16, affirmed October 28, 1975,
petition for review denied January 13, 1976

In the Matter of TAUNA, IAN, AND THURMOND
CRABTREE (AKA THURMAN CRABTREE), MINOR CHILDREN.
STATE EX REL JUVENILE DEPARTMENT OF
LANE COUNTY ET AL, *Appellants, v.* CRABTREE
(No. 10,262, CA 4563), *Respondent.*
541 P2d 1311

*David L. Slader,* Child Advocacy Project, Metropolitan Public Defender, Portland, argued the cause and filed the briefs for appellants-Minor Children. Lucy B. Schafer, Assistant District Attorney, Eugene, joined in appellants' brief by letter for appellant State ex rel Juvenile Department of Lane County.

*Frederick A. Hugi,* Eugene, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

FORT, J.

■ This is an appeal by the Children's Services Division of the State Department of Human Resources from an order of the circuit court denying its petitions, consolidated for trial, to terminate the parental rights of a father over his three children, a girl now aged 10, a boy aged 9 and another boy aged 6. These proceedings were brought pursuant to ORS 419.523, a provision of the Juvenile Code which grants to that court jurisdiction to entertain termination of parental rights proceedings concerning children who are within the juvenile court's jurisdiction pursuant to ORS 419.-476(1). As such, these proceedings are not adoption proceedings authorized by ORS 109.305 to 109.400.

The trial court first heard testimony in this difficult case over a two-day period on October 18 and 22, 1974, and denied each of the petitions. Thereafter it allowed a petition to set aside its orders and reopen the cases in order to hear additional evidence. The hearing was requested by counsel hired by Children's Services Division to represent the three children. Additional testimony was taken on March 7 and 31, 1975. The court then took the cases under advisement and, on April 10, 1975, entered its order denying each of the petitions.

We deduce from a voluminous transcript and numerous exhibits that the children have lived away from their father for many years, first in the custody of respondent's parents and later in the custody of the Children's Services Division as wards of the juvenile court. The father was divorced from the children's natural mother in 1970. Her present whereabouts are unknown. Following the father's remarriage, and without his knowledge, the stepmother early in 1972 delivered the children to Children's Services Division. She and the father were divorced sometime thereafter. Since that time the children have been placed in a number of foster homes. At the time these petitions were decided, each was living in a separate foster home.

The plan contemplated by Children's Services Division, if the father's rights were terminated, was to seek for each child an adoptive placement, with the probable result of permanently separating the siblings from each other as well as from their father. Three psychologists testified either by written report or orally. Their opinions varied, although all agreed that each of the children had needs for stability that had never been and were not now being met.

The record also shows that the trial judge, at the request of counsel for both Children's Services Division and the respondent father, interviewed the children in his chambers. At their own request both counsel absented themselves from that interview. Both the oldest child, then nine, and her brother, 11 months younger, unequivocally advised the court that they did not wish to be separated from their father. The third child, then five, had no particular recollection of nor opinion concerning living with his father.

There is sharp conflict in certain important areas of the evidence. It is apparent from the record that

the opportunity of the trial judge to hear and observe the witnesses and to evaluate their credibility is entitled, under such circumstances, to the weight which the law accords it. *Cavilee and Cavilee,* 75 Adv Sh 1883, 21 Or App 506, 535 P2d 774 (1975); *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971); *Gibson v. Gibson,* 196 Or 198, 218, 247 P2d 757 (1952).

In *Dunne v. MaCashum,* 13 Or App 66, 508 P2d 821 (1973), we said in a contested adoption proceeding:

"Under our statute a petitioner is not required to prove that the respondent parent intended to abandon all parental rights. *See, State ex rel Juv. Dept. v. Draper,* 7 Or App 497, 491 P2d 215 (1971), Sup Ct *review denied* (1972). The cases focus on certain minimal expressions of concern, which, if present, indicate that the parent has not neglected the child within the meaning of ORS 109.324.

"For example, this court has previously denied adoptions when the objecting parent has frequently visited the child, see *Eacret v. Dews,* 10 Or App 511, 500 P2d 481, Sup Ct *review denied* (1972), or where the parent *at least* knows who is keeping the child, and that the child is receiving adequate care. *See, State ex rel Juv. Dept. v. Mack,* 12 Or App 570, 507 P2d 1161 (1973); *Drake v. Drake,* 8 Or App 57, 491 P2d 1203 (1971), Sup Ct *review denied* (1972); *Smith v. Green,* 4 Or App 533, 480 P2d 437 (1971)." (Emphasis in original.) 13 Or App at 70-71.

■ We see no useful purpose in detailing the history of the life of this family and the admitted inability of the father to successfully establish a home offering needed stability and economic support for these three children. There are, however, extenuating circumstances, some beyond his control. Also, the father has

periodically demonstrated a long-term continuing interest in the children. These, taken together with the other evidence in the case, cause us to conclude that under the standards announced in ORS 419.523(2) and (3), the order of the trial court refusing to terminate respondent's parental rights at this time was correct. The children remain as wards of the juvenile court under its present orders of commitment to the Children's Services Division.

Affirmed.