Argued and submitted February 26, affirmed October 17, reconsideration denied December 19, 1990, petition for review allowed February 19, 1991 (311 Or 166)

In the Matter of the Adoption of
Benjamin Eder and Dylan Eder, Children.

Robert L. EDER
and Michelle Longo Eder,
*Respondents,*

*v.*

Anita WEST,
*Appellant.*

(A414; CA A50557)

799 P2d 192

James F. Young, Coos Bay, argued the cause for appellant. With him on the brief was Oregon Legal Services Corporation, Coos Bay.

Stephen A. Lovejoy, Lincoln City, argued the cause for respondents. With him on the brief was Jenny Cooke, Portland.

NEWMAN, J.

Edmonds, J., dissenting.

## NEWMAN, J.

In this adoption proceeding, father and his wife petitioned the court to allow wife to adopt father's two sons from his previous marriage to mother. The court concluded that mother had wilfully neglected without just and sufficient cause to provide proper care and maintenance for the children for the year next preceding the petition and that, therefore, the adoption did not require her consent. ORS 109.324.[1] Mother appeals the judgment. On *de novo* review, we affirm.

Father and mother obtained a dissolution judgment in July, 1983. The court awarded custody of their two sons, Benjamin, then three years old, and Dylan, then nine months old, to father, subject to visitation by mother. The court awarded custody to father, because it was concerned about the effect of mother's emotional instability on the children's emotional development. In July, 1984, father moved to modify the judgment, because Benjamin had begun to display regressive behavior after visitations with mother, such as bed wetting, and because he had reported to father that mother had sexually abused him.

In September, 1984, the court modified the dissolution judgment to prohibit all visitation between mother and both children, except for telephone visitation supervised by father. After a hearing, it found that mother was not believable, that she was unstable and paranoid and that she had engaged in "sexually oriented acts" with Benjamin. The court ordered:

---

[1] ORS 109.324 provides:

"If either parent is believed to have wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption and such parent does not consent in writing to the adoption, there shall be served upon such parent a citation in accordance with ORS 109.330 to show cause why the adoption of the child should not be decreed. Upon hearing being had, if the court finds that such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent. In determining whether the parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions. This section does not apply where consent is given in loco parentis under ORS 109.316 or 109.318."

"Any change or modification of the terms of this Order will only be by the approval of the court and after [mother] has had psychiatric evaluation by a psychiatrist acceptable to the court and such therapy or further evaluation as may be recommended."

In December, 1984, mother entered a plea of no contest to sexual abuse in the second degree for the acts that she committed against Benjamin in July, 1984. She received a suspended sentence and five years probation. One condition of probation was that she not have contact with Benjamin until further order of the court.

In January, 1985, mother met twice with Dr. Kjaer, a psychiatrist whom she chose and the court approved, for an evaluation. His diagnosis was: "borderline personality; acute situation reaction; normal grief response (to the divorce and withdrawal of children); possible manic depressive (bipolar) disease; and pedophilia (by history)." He recommended long-term psychotherapy and stated that she must "accept the reality of her misbehavior." Mother strongly disagreed with that diagnosis and refused to seek treatment from Kjaer, because it would require her to admit that she had sexually abused her child, which she continued to deny. Over the course of the next three years, she filed numerous motions to change psychiatrists and to modify the restrictions on visitation. Although she saw Dr. Collins, a psychiatrist in New Mexico,[2] approximately four times in April, 1985, the court did not approve him, because he stated that he accepted mother's denial of the sexual abuse and that he would not be treating her for that.

The court dismissed all of mother's numerous motions to allow visitation, because she continually failed to obtain the therapy that was a prerequisite to visitation. Although mother wrote letters to the children, they often contained inappropriate and unrealistic remarks, in particular that she would be with the children soon, when, in fact, she knew that she could not see them until she had obtained appropriate treatment. One letter to Benjamin referred to the

---

[2] Throughout this litigation, mother has lived in Santa Fe, New Mexico, and in various locations in Oregon.

"warm cozy bed" that Mother had for him in her home. Father edited the letters before they were read to the children.

Mother is a self-employed artist whose work is exhibited in several galleries. Her annual income is approximately $7,000, of which approximately $4,000 is attributable to payments that she receives from the dissolution settlement. She also receives some barter income. Mother was not ordered to pay support for the children. She sent them gifts for birthdays and holidays and occasionally enclosed five or ten dollars, also as gifts.

In November, 1987, mother attempted to establish telephone contact with Dylan and moved the court to hold father in contempt for denying telephone visitation. The court declined. In March, 1988, mother again moved for appointment of a new counselor, because Kjaer had informed the court that he would not provide further evaluation of mother. The court ordered that there be no telephone visitation. Father and mother submitted a list of mutually acceptable therapists, and the court ordered that the Center for Behavioral Intervention (Center) replace Kjaer as the court approved mental health professional for evaluation and treatment of mother for her sexual misconduct with Benjamin and her other psychological problems.

In June, 1988, mother went to the Center on three occasions for psychological evaluation. The Center's diagnoses and conclusions were consistent with those of Kjaer. The report concluded that mother was not treatable at the Center because of her total denial of the sexual abuse, her lack of motivation and her uncooperativeness. It also made recommendations for restrictions that the court should place on visitation, if it should choose to modify its decision that "sex offender specific treatment" be a precondition to visitation with the children.

On August 8, 1988, mother filed a motion to modify the dissolution judgment to allow visitation, in accordance with the guidelines that the Center articulated. On August 12, 1988, father and his wife filed the petition for adoption. After a consolidated hearing on both matters,[3] the court allowed the

---

[3] At the same proceeding, the court also heard a motion to modify the terms of mother's probation. It denied both motions. The only issue in this appeal is the adoption.

adoption by wife, father retaining his status as father of the children. It ruled that mother's consent to the adoption was not required, because she wilfully and without just and sufficient cause had neglected her children by failing to do the one thing that would allow her to regain visitation with them, that is, to obtain treatment.

Mother assigns that ruling as error. She argues that there was not clear and convincing evidence that she had neglected the children, because she did all that she could to increase her access to them through the courts. She also argues that she did not neglect them by nonsupport, because the dissolution judgment did not order her to pay support.

Under ORS 109.324, the court may dispense with the requirement of parental consent to an adoption if it finds by clear and convincing evidence that the parent has wilfully neglected without just and sufficient cause to provide proper care and maintenance for the child for one year preceding the petition. *Chaffin v. Palumbo,* 99 Or App 312, 316, 781 P2d 1247 (1989). The court must apply the statutory criteria with discretion, not mechanically. *Swarthout v. Reeves,* 26 Or App 763, 767, 554 P2d 617 (1976). To evaluate whether a parent's behavior constitutes neglect, the court should focus on the presence or absence of minimal expressions of concern, which are ordinarily measured in terms of money payments and personal contacts. *Chaffin v. Palumbo, supra,* 99 Or App at 315; *Mead v. Roberts,* 74 Or App 238, 242, 702 P2d 1134 (1985). The absence of expressions of minimal concern may be tempered by facts that show that a parent's financial hardship resulted in an inability to provide financial support or that show that lack of visitation resulted from unwarranted constraints imposed by the custodial parent. *Chaffin v. Palumbo, supra,* 99 Or App at 315; *Mead v. Roberts, supra,* 74 Or App at 242.

We do not consider it evidence of neglect that mother made no financial contribution, apart from token gifts, to the children's support, because the dissolution judgment did not obligate her to do so, and she had very limited financial resources. *See DaCosta v. Adams,* 67 Or App 84, 87, 677 P2d 65 (1984). We do, however, attach significance to mother's failure to see her children during the statutory period, as well as during the preceding three years. Although mother argues

that the judicial restriction on visitation was a "constraint" that excused her lack of contact with the children, it was her own misconduct that necessitated that restriction in the first place, and she refused to do the things that could have led the court to remove that restriction—to acknowledge responsibility for her sexual abuse of Benjamin and to obtain sex offender treatment. Mother had engaged in sexually oriented acts with Benjamin, had been convicted of sexual abuse in the second degree for the acts that she had committed against Benjamin in July, 1984, and had not obtained the therapy that the court required for her emotional and psychological problems, because she refused to accept responsibility for the sexual abuse of her child. Her lack of visitation was without just and sufficient cause and resulted from her misconduct and subsequent failure to take actions that would have opened the door to resuming visitation. We conclude that there was clear and convincing evidence of wilful neglect. The adoption did not require her consent.

Affirmed.

**EDMONDS, J.,** dissenting.

The majority concludes that mother has wilfully neglected her children under ORS 109.324, because she "refused to do the things that could have led the court to remove th[e] restriction [of her visitation rights]—to acknowledge responsibility for her sexual abuse of Benjamin and to obtain sex offender specific treatment." 104 Or App at 90. By this holding, the majority legislates new meaning into ORS 109.324, which provides, in part:

> "If either parent is believed to have wilfully * * * neglected without just and sufficient cause to have provided proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, * * * the consent of the parent at the discretion of the court is not required and, * * * the court shall have authority to proceed [with the adoption] regardless of the objection of such parent. In determining whether the parent has wilfully * * * neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions."

The majority's holding is without precedent. In

*Dunne v. McCashum,* 13 Or App 66, 508 P2d 821 (1973), we said:

"Neglect, to be 'without just and sufficient cause,' must be 'intentional, deliberate or wilful.' *Wilcox v. Alexander et ux,* 220 Or 509, 515, 349 P2d 862 (1960). That is, the failure to provide support and care must be voluntary and knowing.

"The cases do not precisely delineate the quantum, or type of neglect which will satisfy the statute and obviate the necessity of obtaining the parent's consent to the adoption. Such an accurate definition is probably impossible.

"Under our statute a petitioner is not required to prove that the respondent parent intended to abandon all parental rights. *See, State ex rel Juv. Dept. v. Draper,* 7 Or App 497, 491 P2d 215 (1971), Sup Ct *review denied* (1972). The cases focus on *certain minimal expressions of concern,* which, if present, indicate that the parent has not neglected the child within the meaning of ORS 109.324.

"For example, this court has previously denied adoptions when the objecting parent has frequently visited the child, see *Eacret v. Dews,* 10 Or App 511, 500 P2d 481, Sup Ct *review denied* (1972), or where the parent *at least* knows who is keeping the child, and that the child is receiving adequate care. *See, State ex rel Juv. Dept v. Mack,* 12 Or App 570, 507 P2d 1161 (1973); *Drake v. Drake,* 8 Or App 57, 491 P2d 1203 (1971), Sup Ct *review denied* (1972); *Smith v. Green,* 4 Or App 533, 480 P2d 437 (1971)." 13 Or App at 70. (First emphasis supplied; second emphasis in original.)

Thus, we have always evaluated the presence or absence of minimal expressions of parental concern in terms of money payments or personal contacts. *Chaffin v. Palumbo,* 99 Or App 312, 315, 781 P2d 1247 (1989). Moreover, as we said in *Mead v. Roberts,* 74 Or App 238, 242, 702 P2d 1134 (1985):

"The absence of such minimal expressions may be tempered by facts showing that a parent's financial hardship resulted in the inability to provide monetary support, *see State ex rel Juv. Dept. v. Mack,* 12 Or App 570, 574, 507 P2d 1161 (1973), or by a showing that lack of visitation resulted from an unwarranted degree of constraint imposed by the custodial parent. *See Cramer v. Leistikow,* 37 Or App 539, 542-43, 588 P2d 53 (1978)."

Here, in the year preceding the filing of the adoption petition, mother was under no obligation to pay and did not pay any support. However, she knew where her children were

at all times and that they were receiving excellent care. During that time, she was prohibited by a court order from visiting her children. In November, 1987, she attempted to establish phone contact with the children but was rebuffed by father. One month later, mother moved the court to hold father in contempt for not allowing the telephone calls. The court did not rule on that motion until March, 1988, when it declined to hold father in contempt and granted his motion to modify the decree to forbid any future telephone contact. During that time, mother continued to write to her sons on a monthly basis and regularly inquired of third parties as to their well-being.

Also, in the fall of 1987, mother moved to have a new court-appointed therapist and submitted a list of names to the court for approval. The court ordered a substitute, and in June, 1988, mother submitted to a sex offender evaluation, which concluded that she was "untreatable * * * because her denial, lack of motivation and uncooperativeness." Nonetheless, it stated that, "[u]nless the [children] expressed no interest in seeing their mother, or their behavior deteriorated significantly following visits, then they should probably be permitted to resume contact. This should not depend on [mother's] entering therapy." After the report, mother moved the court to grant her limited, supervised visitation rights. Four days later, father and his new wife filed this petition for adoption.

This case is analogous to *Tallman v. Bantsari,* 29 Or App 747, 564 P2d 1371 (1977), where the mother refused to comply with visitation requirements in the dissolution judgment. At the father's behest, the trial court modified the decree to eliminate the requirement that he pay child support. Thereafter, he never paid support and did not visit his children, although he continued "to desire visitation and maintenance of his familiar relationship with his children." 29 Or App at 749. We affirmed the denial of a petition for adoption, saying:

> "Failure to pay support and failure to visit with the children do not necessarily constitute wilful desertion or neglect without just and sufficient cause as contemplated by ORS 109.324. We have so held where the no-support/no-visitation arrangement is induced by the custodial parent, *Mahoney v. Linder,* 14 Or App 656, 514 P2d 901 (1973), and it is all the

more true where, as here, *the lack of contact between non-custodial parent and children is due to the conduct of the custodial parent and the order of the court over the desires of the noncustodial parent to the contrary.*" 29 Or App at 750. (Emphasis supplied.)

The majority also ignores our analysis in *DaCosta v. Adams,* 67 Or App 84, 677 P2d 65 (1984), where the father had filed a petition for adoption over the protests of the mother. Although the decree of dissolution gave her no visitation rights, she periodically, although irregularly, called her child. She made an unsuccessful attempt to visit her child, after which she filed a petition to modify the decree to provide her visitation rights. A short time later, the father filed the petition for adoption. We said:

"[Mother's] efforts to enjoy visitation * * * cannot be ignored. From her subsequent effort to establish regular visitation *through modification of the dissolution decree,* which antedated the filing of the adoption proceedings, we infer a genuine concern for maintaining and strengthening the parent-child bond." 67 Or App at 88. (Emphasis supplied.)

Here, it is undeniable that mother continues to desire visitation and maintenance of her relationship with her children. As detailed above, she made several attempts to contact her children during the year before the petition was filed. Father, however, prohibited her from talking to the children and obtained a court order that forbade telephone calls and continued in effect a previous order that restricted mother from having any personal contact with the children, unless she were to obtain court-approved counseling.

The majority makes much of the fact that mother did not acknowledge her sexual abuse of Benjamin and obtain sex offender treatment. Mother attempted to obtain treatment that did not require her to admit that she had abused Benjamin. The court declined to approve that treatment program. I agree that mother's admitting that she had abused Benjamin was an important consideration in structuring visitation rights that were in his best interests, but her failure to do so is not "neglect" within the meaning of ORS 109.324. To the contrary, her attempts to have visitation with her children by vigorously pursuing her legal remedies during the pertinent one-year period meet the statutory test of minimal expressions of concern.

There may be salutary ends that the majority seeks to obtain by terminating mother's rights. There is little emotional support for a mother who sexually abuses her child and then refuses to obtain treatment that will rehabilitate her. More is at stake here. Whether such conduct justifies termination of parental rights is a legislative decision, and we are not authorized to extend the language of the law beyond its natural meaning in order for us to accomplish what we think is a just result. *Union Pac. R. R. Co. v. Anderson,* 167 Or 687, 697, 120 P2d 578 (1942). As the Supreme Court said in *Moody v. Voorhies,* 257 Or 105, 111, 475 P2d 579 (1970), we are bound by the language of ORS 109.324 and cannot rearrange parent-child relationships except when the statutory criteria have been met. The failure to obtain sex offender treatment is not "neglect" under any ordinary meaning of the word.

Non-custodial parents should beware. Under the majority's holding, if they disagree with or fail to comply with any court ordered obligation, regardless of whether they have endeavored to express minimal concerns about their children in all other available ways, they stand the risk of losing their parental rights. The legislature did not intend that result, and we should not expand ORS 109.324 to achieve it.

Joseph, C. J., and Buttler and Warren, JJ., join in this dissenting opinion.