Argued July 28, reversed August 25, petition for rehearing denied
September 14, petition for review denied October 17, 1972

EACRET ET UX, *Respondents, v.* DEWS (No. 475),
*Appellant.*
500 P2d 481

*Vincent G. Ierulli,* Portland, argued the cause for appellant. With him on the briefs were Franklin, Bennett, Des Brisay & Jolles, Portland.

*Robert P. Van Natta,* St. Helens, argued the cause for respondents. With him on the brief were Van Natta & Petersen, St. Helens.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

## THORNTON, J.

This appeal is from a decree allowing the petition to adopt Patricia Lee Dews, a minor. Petitioner Evelyn Eacret is the paternal grandmother of the minor child. Mrs. Eacret's present husband, Marion Eacret, joined her in the petition. The natural father, Thomas Dews, consented to the adoption. The natural mother, Mary Dews, withheld her consent and contested the adoption.

The petition for adoption was filed April 19, 1971. Jurisdiction to proceed with the adoption, in the absence of the natural mother's consent, was sought

under ORS 109.324. The relevant portion of ORS 109.324 provides:

"* * * [I]f the court finds that such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and * * * the court shall have authority to proceed regardless of the objection of such parent * * *."

The minor child, Patricia Lee Dews, is a ward of the Multnomah County Juvenile Court and has been in the custody of petitioners since January 1968, when Mary Dews voluntarily requested the petitioners to care for the child.

The trial court found jurisdiction to proceed with the petition for adoption on the ground that under ORS 109.324 the consent of the natural mother was not required because she "neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption * * *."

The question on appeal is whether the criteria of ORS 109.324 have been met.

The natural mother was married to Thomas Dews, the natural father, on January 16, 1965. At this time she was a 17-year-old high school student, and two-months pregnant with the minor child involved in this proceeding. Mary dropped out of school because of the pregnancy. Thomas Dews had previously dropped out of high school.

The child, Patricia Lee, was born July 26, 1965. The couple separated permanently two months later;

however, they were not divorced until July 22, 1970. The mother, Mary Dews, kept the child until January 1968 when she turned the child over to her mother-in-law (petitioner) for care and custody. Numerous witnesses, including Mary Dews herself, testified that the child was not adequately cared for during the above period. The life style of Mary Dews during this period was haphazard at best, and was clearly adverse to the proper care and raising of an infant.

The child was made a ward of Multnomah County Juvenile Court on September 13, 1966, with supervision given to the Multnomah County Welfare Department. Welfare caseworkers have continued to work with Mary Dews from that time until the present.

After her separation from Thomas Dews, Mary "ran wild" for a time, as she put it. She became associated with unsavory elements in Portland, including a motorcycle gang. As a result of these associations she began using drugs. During 1968 she was convicted of possession of a stolen credit card and put on probation. Mary's probation was later revoked and she was sentenced to one year in the Multnomah County Jail. She was incarcerated from September 1968 through April 29, 1969. While in confinement she underwent major surgery. Upon release from jail Mary Dews was admitted to the Multnomah County Hospital for further surgery, and spent the remainder of the summer of 1969 convalescing in her mother's home. It also appears that Thomas Dews became involved in crime and served a jail sentence.

Before going to jail, Mary Dews obtained her high school diploma through General Equivalency Testing. Mary Dews is currently employed by her mother as a waitress. She works nights and has an independent

living situation. She has been employed since March 1970.

The child, Patricia Lee Dews, lives with the petitioners and is supported entirely by them. At Mary Dews' request visitation arrangements were set up and supervised by the Children's Services Division. The apparent objective of the welfare authorities has been to work toward an eventual reuniting of the child with her natural mother, Mary Dews. Joint Exhibit No. 6 is a confidential report to the court from the state Children's Services Division. This report recommends that the adoption not be allowed and that the child be placed with the natural mother, with continuing supervision by the Children's Services Division because it concludes that the mother is exhibiting sufficient progress in adjusting her life style to an acceptable standard and accepting the responsibilities of an adult life. The mother has expressed love and a sincere interest in her child's welfare, and for return of the child to her care.

We have here again the tragic and all-too-familiar story of a premature and unfortunate teenage marriage: two adolescent young people commenced dating; after a time the girl unexpectedly became pregnant. Although neither party was old enough to understand the serious responsibilities of marriage and parenthood, a hasty marriage followed with which both were hopelessly ill-equipped to cope. The girl dropped out of high school because of the pregnancy. (The boy had already dropped out.) The young husband became unemployed, could not find work, and they had to apply for welfare assistance. Barely eight months after the hasty marriage the young couple split up. The baby was born, and the mother commenced the struggle to

raise the child on her own. After that, the only time the young father provided any support for his wife and child was through a dependent's allotment during his two-year period of army service.

In the course of various make-shift living arrangements the girl became involved with undesirable associates, finally going to her estranged husband's family and asking them to shoulder the burden of caring for the baby. The grandparents accepted the child and cared for her with admirable competence and affection. Understandably they have become very attached to the little girl and seek to adopt her.

Under ORS 109.324 consent of a parent is not required if the court finds: (1) that the natural parent willfully deserted, or (2) neglected to provide proper care and maintenance. The court made no findings that the natural mother willfully deserted her child. Therefore, the question to be decided is: Did the natural mother willfully neglect to provide proper care and maintenance for one year immediately preceding the filing of the petition for adoption without just and sufficient cause?

■■ Failure to support, standing alone, is not sufficient to establish desertion or willful neglect. *Omlie et ux v. Hunt,* 211 Or 472, 316 P2d 528 (1957); *Drake v. Drake,* 8 Or App 57, 62, 491 P2d 1203 (1971), Sup Ct *review denied* (1972). Before failure to support can justify a finding of neglect, "without just and sufficient cause," the nonsupport must be intentional. *Wilcox v. Alexander et ux,* 220 Or 509, 349 P2d 862 (1960); *Drake v. Drake,* supra; *State ex rel Juv. Dept. v. Draper,* 7 Or App 497, 491 P2d 215 (1971), Sup Ct *review denied* (1972).

The facts in the case at bar bear many similari-

ties to those in *Drake,* except that in *Drake* the young mother had been hospitalized intermittently for mental problems.

Like the defendant mother in *Drake,* and unlike the defendant father in *Draper,* the mother in the present case knew at all times where the child was and that the child was receiving excellent care.

The record in this case shows that during the one year immediately prior to the filing of this petition Mary Dews was in decidedly adverse financial circumstances. In addition to supporting herself, she was making payments from her meager earnings on approximately $1,200 in family debts, some of which were incurred during the youthful marriage, and were the joint responsibility of both. She continued to evidence a strong attachment for her child by frequent visits.

It is true that Mary Dews did not make any significant financial contributions to Patricia's support during this one-year period. Neither did the child's father make any contribution. According to the testimony, at no time did petitioners request Mary Dews or their son, Tom Dews, to contribute financially to the support of the child.

After examining the entire record we conclude that the evidence taken as a whole does not support the finding of the trial judge that the nonsupport or failure to provide was intentional, deliberate or with willful design under the criteria laid down in ORS 109.324 and followed in *Smith v. Green,* 4 Or App 533, 480 P2d 437 (1971), and *Drake v. Drake,* supra.

■ In view of the fact that during this one-year period the mother was struggling to support herself as well as pay off various debts, we do not believe that

she is chargeable with willful failure to support her child.

It follows that petitioners did not sustain the burden of showing that Mary Dews willfully and intentionally neglected to provide proper care and maintenance for her daughter. As the Supreme Court pointed out in *Omlie et ux v. Hunt,* supra at 482:

> "* * * However, mere failure to support, particularly when the children are otherwise receiving adequate care, is not in itself proof of desertion, nor does it necessarily prove that the neglect is 'willful.' * * *"

Nothing herein shall be construed to affect the order of the Multnomah County Juvenile Court providing for the custody or care of Patricia Dews.

Reversed.