Submitted on record and brief August 23, affirmed September 13, 1976

In the Matter of the Adoption of Stephanie Rae Anne
Reeves, a Minor,
SWARTHOUT et ux, *Appellants,*
*v.*
REEVES, *Respondent.*
(No. 2954, CA 6030)
554 P2d 617

Eric S. Busch, Portland, filed the brief for appellants.

No appearance for respondent.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

TANZER, J.

**TANZER, J.**

The natural mother and the stepfather of a minor child petition for a decree making the stepfather the adoptive father. The respondent is the child's natural father and the former spouse of the natural mother. Having failed to obtain the father's consent to the adoption, the petitioners sought to prove that such consent was unnecessary by virtue of ORS 109.324, which provides in pertinent part:

> "* * * [I]f the court finds that such parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent. In determining whether the parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions. * * *"

The trial court found that the father's conduct and his relationship with his daughter did not constitute wilful desertion or unjustified neglect under the statute and therefore refused to grant the adoption petition over his objection. The mother and stepfather appeal.

In 1971 the mother and father were married and living in Longview, Washington. While the mother was in an advanced stage of pregnancy, the father left the family home and moved to Albany, Oregon, where he was, apparently, gainfully employed. The mother remained in Longview. Her living expenses and medical care incident to the birth of the child were paid for by the State of Washington Welfare Department. The father left, he claimed, because the state could afford to pay for the cost of birth and he could not.

When the child was born, the father returned to Washington, lived with his wife and daughter briefly,

but he left again shortly thereafter and did not return. He presently resides in Albany, Oregon.

The mother remained in Washington for several months after the father's final departure and received public assistance. During this time the father made occasional visits to the mother and child. These visits' varied in length from a few hours to an entire week. While the mother lived in Washington the father contributed nothing to the child's support.

Thereafter, the mother moved to Portland where she took a job and was able to support herself and the child. From time to time she telephoned the father and encouraged him to visit his daughter. The father apparently visited the mother's apartment on several occasions, some of them being after the child was asleep.

While separated and prior to dissolution of their marriage, the mother asked the father for financial assistance, but he rarely considered himself able to oblige. He has contributed less than $100, in three payments, to the child's support since her birth. Although the record is not clear, it appears that the father's income, through 1973, was less than $4,000 per year. In 1974 he showed an income of $7,756.

On December 31, 1973, a decree was entered dissolving the parents' marriage. By the terms of that decree, the mother was awarded custody of the child, the father was granted no visitation rights, and he was not ordered to pay any child support. The father has not seen the child since a few months prior to the entry of that decree.

This petition for adoption was filed on September 5, 1975. Thereafter, the father filed an objection to the adoption and petitioned for a modification of the above-described decree of dissolution, requesting that he be ordered to pay $75 per month child support and that he be allowed reasonable visitation.

It cannot be said that the noncustodial parent's

neglect of the child during the relevant one-year period, as indicated by his failure to visit or contribute to the child's support, is "without just and sufficient cause" within the meaning of ORS 109.324, if such neglect is the result of constraints imposed by the custodial parent. *Brown v. Taylor,* 22 Or App 219, 538 P2d 1268, *rev den* (1975); *Berry v. Letchworth,* 19 Or App 261, 527 P2d 145 (1974); *Mahoney v. Linder,* 14 Or App 656, 514 P2d 901 (1973). A decree restricting visitation is such a constraint. *Sayre v. Whitehead,* 25 Or App 205, 548 P2d 521 (1976). Here, respondent's inattention to his child during the year preceding the filing of this petition for adoption was consistent with the terms of the decree of dissolution obtained by the mother. Therefore, the father's post-decree neglect will be considered to be with just and sufficient cause unless the decree merely formalized the preexisting situation. The father's predissolution conduct thus becomes relevant and we weigh his entire course of conduct against the standards for termination of parental rights under ORS 109.324.

The legislative history of ORS 109.324 indicates that it was intended that the courts apply the statutory criteria with discretion rather than mechanically. Prior to 1957, former ORS 109.320 required proof of both wilful desertion and neglect. *See, Wilcox v. Alexander et ux,* 220 Or 509, 514, 349 P2d 862 (1960). Since wilful desertion was interpreted to require "a settled purpose to forego all parental duties and to relinquish all parental claims to the child," *Omlie et ux v. Hunt,* 211 Or 472, 482, 316 P2d 528 (1957), the change in the statute from the conjunctive to the disjunctive allowed the courts greater latitude in granting adoption over the objection of a nonconsenting parent. The 1957 legislature also added the following language to the statute:

> "* * * In determining whether the parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communica-

tions and contributions. \* \* \*"[1] Oregon Laws 1957, ch 710, § 7, p 1239.

Under this clause, slight financial contribution and perfunctory visits do not automatically preserve parental rights, but should be considered together with all other evidence.

The cases do not precisely delineate the quantum or type of neglect which will satisfy the statute. Rather, they focus on "certain minimal expressions of concern which, if present, indicate that the parent has not neglected the child," *Dunne v. McCashum,* 13 Or App 66, 70-71, 508 P2d 821 (1973). The process ordinarily resolves to counting money payments and visits as evidence of deep human emotions and relationships which are difficult to document more meaningfully.

In the case at bar, respondent's conduct toward his child prior to the dissolution decree was not exemplary. His contribution to the child's support was minimal. However, in view of respondent's insubstantial income during the time in question, we cannot conclude that his nonsupport was wilful and not based upon inability. *Eacret v. Dews,* 10 Or App 511, 500 P2d 481, *rev den* (1972). His visits were infrequent, but meaningful relationship-building visits with a child of one, two or three years are difficult and perhaps impossible to achieve. Under these circumstances, although the father might have done more, we cannot entirely disregard his efforts. His present desire to establish regular visitation and support payment may be the reaction of a person who cannot admit that he should not be a parent, or it may be an expression of genuine parental concern. The severance of the parental rela-

---

[1]In 1963, the same language was incorporated into ORS 419.523 relating to termination of parental rights when the children are within the jursidiction of the juvenile court. From 1963 to 1973 the language of ORS 109.324 and 419.523(2) was substantially the same. In 1973 the legislature amended ORS 419.523 to detail the circumstances in which parental rights may be terminated in that situation.

We point out without drawing conclusions the anomaly of separate statutory standards of protection of the same parental relationship in two different social and procedural settings.

tionship is irreversible. Therefore, in a close case such as this, we are inclined to give benefit of doubt toward maintaining the family bond. We conclude, therefore, that respondent's conduct before and after the decree did not constitute neglect without just and sufficient cause within the meaning of ORS 109.324. This close case, however, serves to place respondent on notice of the consequences of ignoring his parental responsibilities, and in this respect it may be relevant to similar proceedings in the future. *Thies v. Barnes,* 11 Or App 158, 501 P2d 1305 (1972).

Affirmed.