Argued and submitted September 19, 1990, reversed January 23, 1991

In the Matter of the Adoption of
Tracy Lee Threets-Howell, a Minor Child.

Cindy HAIRSTON
and Mark Anthony Hairston,
*Respondents,*

*v.*

Arthur Lee THREETS,
*Appellant.*

(89-B-4535-2; CA A63422)

804 P2d 1213

Barbara A. Jarvis, Medford, argued the cause and filed the brief for appellant.

No appearance by respondents.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

**RIGGS, J.**

Father appeals from a judgment terminating his parental rights and allowing the adoption of his minor daughter by mother's husband. He assigns error to the trial court's conclusion that he neglected without just and sufficient cause to provide proper care and maintenance for the child for one year preceding the filing of the adoption petition. ORS 109.324. On *de novo* review, we reverse.

Mother and father were unmarried and lived together for three years, 1983 through 1985. Their daughter was born in Oregon in September, 1984. Father moved to California in January, 1986, and married another person shortly thereafter. Mother began living with Hairston sometime in 1986, and they were married in March, 1988. Mother has always had physical custody.

On September 25, 1989, mother and her husband filed a petition to adopt daughter without father's consent, pursuant to ORS 109.134. After a hearing, the court found that father had neglected the child within the meaning of ORS 109.324 and granted the adoption over his objections.

■ Father argues that the trial court erred in granting the petition for adoption without his consent, because the record fails to establish neglect by clear and convincing evidence. We agree.

ORS 109.324 provides, in relevant part:

"Upon hearing being had, if the court finds that [a] parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of such parent at the discretion of the court is not required and, if the court determines that such consent is not required, the court shall have authority to proceed regardless of the objection of such parent. In determining whether the parent has wilfully deserted or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may disregard incidental visitations, communications and contributions."

To determine whether a parent's behavior constitutes neglect, we look to the presence or absence of certain minimal expressions of concern, which is usually measured by evidence

of money payments and personal contacts with the child. *DaCosta v. Adams,* 67 Or App 84, 87, 677 P2d 65 (1984).

> "The absence of such minimal expressions may be tempered by facts showing that a parent's financial hardship resulted in the inability to provide monetary support, *see State ex rel Juv. Dept. v. Mack,* 12 Or App 570, 574, 507 P2d 1161 (1973), or by a showing that the lack of visitation resulted from an unwarranted degree of constraint imposed by the custodial parent." *Mead v. Roberts,* 74 Or App 238, 242, 702 P2d 1134 (1985). (Citation omitted.)

Father has not provided any financial support since he left for California in January, 1986. He argues that he was unable to do so, because he was disabled and has not worked since March, 1986. The record is sparse with respect to evidence concerning father's and his wife's economic circumstances during the relevant one-year period. However, they testified that they and their two children have been living on ADC and disability payments and that he began working part-time approximately one week before the adoption hearing. On *de novo* review, we conclude that father's lack of financial resources constitutes "just and sufficient cause" to excuse his failure to contribute to his daughter's financial support.

We next examine whether there is an absence of personal contact between father and the child. Father argues that he has tried to see his daughter several times since 1986 and during the one-year period before the filing of the adoption petition but that mother has consistently refused him visitation unless he paid support. He contends that his lack of visitation is excused by mother's continued intransigence.

Father visited his daughter during Christmas, 1986, and gave her presents. Sometime in late 1986, and again at the end of 1987, there were problems with visitation that prompted mother to obtain restraining orders to prevent father from contacting her, the child or the child's maternal grandmother.[1] Father and his wife made monthly visits to Oregon to visit the wife's family during 1986 through 1988. They testified that father attempted to see daughter on several of those trips. Each time mother refused visitation unless

---

[1] Mother testified that father once took the daughter and refused to return her after a visit. It appears that father did not ask for a hearing on either of the restraining orders.

he paid support.[2] Father's wife also testified that father attempted to see his daughter while she was being cared for by a babysitter, Hamilton, and was told that the restraining order precluded him from visiting her. Hamilton corroborated that testimony.

Father twice tried to resolve the visitation problems by mediation and was unable to obtain mother's cooperation either time. Although the record is unclear, it appears that he initially retained an attorney and established a visitation schedule sometime in 1987. However, father and his wife testified that mother denied him visitation and insisted that all visits be supervised. Father felt that that was unreasonable. Court supervised mediation was unsuccessful. Sometime after the first unsuccessful mediation, father contacted Legal Aid in California, which informed him that he would need to move to Oregon and retain local counsel to pursue the matter further and to resolve the visitation issue definitively. Father and his wife returned to Oregon. The record is unclear exactly when that occurred. Father again attempted, unsuccessfully, to resolve the visitation problem by mediation, apparently within the relevant one-year period before the filing of the adoption petition. In July, 1989, father sought modification of the 1987 visitation schedule.

Father and his wife testified that he made several attempts to visit his daughter after returning to Oregon,[3] most of which were unsuccessful. He also testified that he left his telephone number on mother's front door, that she called him, found out who it was and never called again. At the hearing, he placed the time of that incident as "roughly eight months, nine months ago." Mother has not had a phone during the past year.

Several witnesses corroborated father's testimony that he tried to see his daughter several times within the year before the adoption petition was filed and that mother prevented him. The wife's brother testified that he had witnessed mother shutting the door in father's face and placed the time

---

[2] Father also testified that he and mother "talked on the phone several times" but, when he tried to arrange visitation, mother told him, "no money, no visitation."

[3] Father and his wife contend that mother has always known where they were; mother disputes that and contends that she had "no idea" how to contact him.

of that incident "about a year ago or something * * * maybe not that long." Another witness testified that father and his wife tried to visit the daughter "several times * * * but they didn't get very far. The door was normally slammed shut. And that was it, and they would come back to the car."[4]

Father and his wife testified that he has been able to see the daughter secretly on a few occasions while mother was at work and the child was being cared for by Ricker, mother's next door neighbor, who babysat child during May and June, 1989.[5] The wife testified that he had to "sneak down the alley at the babysitters" [sic] to see the child, and Ricker's testimony corroborated their statements. She said that father visited his daughter "several times," "numerable times," while she watched the child at her home.

We have said that a parent's failure to visit, during the relevant one-year period, is not " 'without just and sufficient cause' within the meaning of ORS 109.324, if such neglect is the result of constraints imposed by the custodial parent." *Swarthout v. Reeves,* 26 Or App 763, 767, 554 P2d 617 (1976). (Citations omitted.) We conclude that mother's behavior constituted a constraint sufficient to excuse father's failure to have more than minimal contact with his daughter. Although father's

"failure to visit the child was not wholly justified by the 'difficulty' created by the conditions imposed by [mother], *see Cramer v. Leistikow,* 37 Or App 539, 543, 588 P2d 53 (1978), [his] efforts to enjoy visitation [during September, 1988, through September, 1989], cannot be ignored." *DaCosta v. Adams, supra,* 67 Or App at 88.

We hold that mother has failed to prove by clear and convincing evidence that father has "neglected" his daughter

---

[4] Mother and her husband claim that the only attempts that father has made to see his daughter have been after this proceeding was begun.

[5] Daughter had two daycare providers: Hamilton, who took care of her for four years, from age six months until "April of this year," and Ricker, who testified at the December, 1989, hearing that she babysat daughter "just before last summer * * * [j]ust before school was out last year," "for a couple of months." Ricker testified that "father made attempts to see daughter [s]everal times" "while she was playing out in the alley, numerable times." Putting their testimonies together, it appears that Ricker took care of the child during May and June, 1989.

within the meaning of ORS 109.324 so as to permit a termination of his parental rights without his consent. Therefore, we reverse the trial court's decree of adoption.

Reversed.