Argued and submitted May 22, reversed and remanded August 23, petition for review denied November 2, 2023 (371 Or 511)

In the Matter of the Adoption of E. L. R.,
new name E. L. E., a Child.

E. A. R.
and E. M. E.,
*Petitioners-Respondents,*

*v.*

R. B. E. IV,
*Respondent-Appellant.*

Jackson County Circuit Court
21AP00604; A180312

535 P3d 793

Father appeals from a general judgment of adoption that allowed his five-year old child to be adopted without his consent. The trial court concluded that father's consent was not required because, under ORS 109.324, he had willfully neglected without just and sufficient cause to provide proper care and maintenance for his child during the year immediately preceding mother and her partner's filing of the petition for adoption. On appeal, father argues that the trial court erred in finding that he did not have just and sufficient cause excusing his neglect and erred in allowing the adoption to proceed without his consent. *Held*: Father neglected his child during the relevant statutory period; however, father had just and sufficient cause excusing his neglect. The Court of Appeals concluded that father's incarceration, combined with mother's actions to rebuff father's attempts to maintain contact with their child, constituted just and sufficient cause excusing father's neglect. Therefore, the trial court erred in allowing the adoption to proceed without father's consent.

Reversed and remanded.

Benjamin M. Bloom, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

Melisa A. Button argued the cause and filed the brief for respondents.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Reversed and remanded.

**JOYCE, J.**

In this adoption proceeding, birth father appeals from a judgment that allowed his five-year old child, E, to be adopted without his consent. He asserts that the trial court erred when it found that he had willfully neglected, without just and sufficient cause, to provide proper care and maintenance for E during the year immediately preceding mother and her partner's filing of the petition for adoption. *See* ORS 109.324. Because we agree that father had just and sufficient cause for his neglect, we reverse.

## FACTUAL BACKGROUND

We review the facts *de novo*, deferring to the trial court's demeanor-based credibility finding that "father was not credible" about his attempts to maintain a relationship with *E. J. W. V. v. J. L. W.*, 324 Or App 393, 395, 525 P3d 1237 (2023) (holding that we review the facts in adoption proceedings *de novo* because termination of parental rights is part of the proceeding, and, under ORS 19.415(3), we conduct *de novo* review of termination of parental rights).

ORS 109.324(2) provides that if a court finds that a parent has "willfully deserted the child or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption," the consent of the parent is not required for adoption. Mother and her partner filed the petition for adoption in May 2021. Thus, we focus on the extent of father's contact with E during the year preceding the filing of that petition—here May 2020 to May 2021. That said, because many of the events that occurred before that time are relevant to resolving father's arguments on appeal, we describe those events as well.

Mother and father were married in 2016, and mother gave birth to E in January 2017. Father was deployed to a military base in Texas in February 2018. Two months later, father was arrested, and then convicted, in Texas for online solicitation of a minor. While in prison, father was also convicted in Oregon of first-degree online sexual corruption of a child and second-degree sexual abuse for having sexual

contact with a 15-year-old. As a result of all of those convictions, father was sentenced to several years in prison.

Early in his term of incarceration, father maintained regular contact with mother and E through phone calls and letters. Initially, father would call mother multiple times per week, and mother would let father talk with E. In addition to those phone calls, father regularly sent letters to mother. Although those letters would mention E, they mainly concerned the relationship between father and mother.

While he was incarcerated, father gave mother access to his bank account, in which he deposited about $15,000. Father gave mother access to his account to help her support E (and other nonjoint children). Mother began withdrawing funds from father's account in June 2018, and mother eventually withdrew all of the funds.[1]

In October 2018, mother filed for divorce. Father received the petition but did not file a response or participate in the divorce proceeding.[2] Accordingly, the court entered a default judgment against father, granting full custody of E to mother, providing no visitation to father, and ordering no child support.

In December 2018, mother asked father to stop calling. For some time, father continued to attempt to call mother every six to eight weeks. However, when father would call mother, she would not answer the phone, and, due to the prison phone system, father did not have the ability to leave voicemails. While in prison, father also did not have access to the internet, email, or video calls.[3] Father continued to send mother letters, but mother did not respond to father's letters.

In addition to letters and phone calls, father also asked his mother, Vawter, to text and call mother to try to

---

[1] It appears mother withdrew all of the funds by October 2019.

[2] Father testified that he did not learn about the divorce until after the default judgment was entered. The trial court found father's testimony in that respect not credible, based on exhibits that reflected that he received personal service and acknowledged the divorce proceedings in letters to mother.

[3] Father testified that he "d[id]n't have access to internet at all" and there was no evidence presented to the contrary.

maintain contact with E. Vawter tried contacting mother through messages on Facebook. However, mother blocked Vawter on Facebook in 2019 because, mother testified, every message from Vawter was a message from father about his relationship with mother.

In January 2019, mother moved out of the home in Medford that she had previously shared with father. Mother first moved from Medford to Jacksonville. However, a year later, in January 2020, mother moved back to Medford, but into a different residence. Both times that mother moved, she provided a change of address to the postal service, although the forwarding service expires after one year. Mother did not inform father either time that she had moved, and she did not provide father with either updated address. Her phone number, however, remained the same.

In April 2020, the letters that father sent to mother began getting returned. Those letters were returned because it had been roughly a year since mother had moved from her first address in Medford—the address to which father had been sending all of his letters—and mother's change of address with the post office had expired.

After father's letters started getting returned, he asked Ernst, the mother of one of his other children, to hand deliver a letter to mother with the purpose of reestablishing direct communication with mother. Ernst agreed and hand delivered a letter to mother in April 2020. According to mother, that is the last communication she received from father prior to the filing of the adoption petition. Father asserted that Ernst hand delivered another letter in May 2020, although mother disputed receiving that letter.

Around October 2020, father signed a power of attorney for Vawter so that she could retrieve his bank statements. At least some of the bank statements listed father's name but mother's Jacksonville address (changed by mother). Vawter did not send father copies of his bank statements and instead read the information to him over the phone. There is no evidence that Vawter gave father mother's Jacksonville address (which would have still had an active forwarding order).

In May 2021, mother and her partner jointly filed the adoption petition that initiated this case. The court appointed counsel for father. Father's attorney in the adoption case also filed an appearance in the divorce case in October 2021, seeking to modify the divorce judgment to obtain parenting time and to order father to pay child support.

Father was released from prison in February 2022.

After a hearing on the adoption petition in May 2022, the trial court granted the petition, concluding that during the one-year period before the filing of the adoption petition, father had willfully neglected E without just and sufficient cause. The trial court then entered a judgment terminating father's parental rights and concluded that it was in E's best interests that the adoption be granted. Father now appeals.

## LEGAL ANALYSIS

Because it impacts our legal analysis, we begin with the trial court's credibility findings. The trial court "specifically [found] that father was not credible and discount[ed] his testimony that he attempted to maintain a relationship with [E]." The court went on to note "its conclusion that Father was not truthful about his knowledge of the divorce proceedings" in light of the evidence that father received personal service of the petition. We defer to the court's findings to the extent that they are based on the trial court's ability to observe father; "we give considerable weight to the findings of the trial judge who had the opportunity to observe the witnesses and their demeanor in evaluating the credibility of their testimony." *Fitts v. Case*, 243 Or App 543, 552 n 3, 267 P3d 160 (2011). That said, the deference that we give the trial court's credibility findings lessens when the findings turn on other factors, such as internal consistency, logic, and corroboration. *See In re Schenck*, 318 Or 402, 420-21, 870 P2d 185, *cert den*, 513 US 871, 115 S Ct 195, 130 L Ed 2d 127 (1994). Thus, to the extent that we can assess father's credibility based on documentary evidence—like letters and legal documents—we do so. As a practical matter, as we discuss below, most of the evidence that we rely on regarding father's attempts to maintain contact with E

is corroborated by the testimony of other witnesses, or the exhibits submitted into evidence.

We turn to the merits. As noted above, ORS 109.324(2) provides that if a court finds that a parent has "willfully deserted the child or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption," the consent of the parent is not required. In making that determination, courts may "disregard incidental visitations, communications and contributions" and may consider, among other factors the court finds relevant, "whether the custodial parent has attempted, without good cause shown, to prevent or to impede contact between the child and the parent whose parental rights would be terminated in an action under this section." ORS 109.324(3)(a), (b). The burden of proof rests upon the petitioner—here, mother—to prove by clear and convincing evidence that the respondent neglected without just and sufficient cause to provide for the child's care during the statutory period. *Eder v. West*, 312 Or 244, 266, 821 P2d 400 (1991).

A parent can meet that burden by showing that, during the year preceding the filing of the petition for adoption, the "non-consenting parent willfully fail[ed] to manifest substantial expressions of concern which show that the parent has a deliberate, intentional, and good faith interest in maintaining a parent-child relationship[.]" *Id.* at 266. "Incidental" means "occurring merely by chance or without intention or calculation; being likely to ensue as a chance or minor consequence; not receiving much consideration." *Id.* at 266 n 24 (internal citation omitted). If a court finds that a parent has neglected their child, the next question is whether just and sufficient cause excuses the neglect. ORS 109.324; *see Panter v. Ash*, 177 Or App 589, 594, 33 P3d 1028 (2001) (determining whether the father's neglect was justified by just and sufficient cause). "[W]hether there is just and sufficient cause must be determined by considering the circumstances that caused the neglect." *Panter*, 177 Or App at 594 (citation omitted).

We conclude that father neglected E. During the one year preceding the filing of the petition—May 2020 to

May 2021—father, at most, caused one letter to be delivered from Ernst to mother. We say at most because mother disputes receiving that letter, and there is no evidence regarding that letter other than the conflicting accounts of mother and father. But even if mother received that single letter, one letter during the course of a year is nothing more than the kind of incidental communication that we may disregard. ORS 109.324(3)(a); *T. G. W. v. B. J. V.*, 295 Or App 717, 723, 436 P3d 85 (2019) (one or two letters over the course of a year "does not rise to the level of a *substantial* expression of concern" (emphasis in original)). Father also did not provide any kind of financial support to E during this time or send any gifts. As such, father's lack of contact with E constitutes neglect.

The more difficult question is whether father had just and sufficient cause for that lack of contact. "Neglect, to be 'without just and sufficient cause,' must be 'intentional, deliberate or willful.' That is, the failure to provide support and care must be voluntary and knowing." *Brown v. Taylor*, 22 Or App 219, 224, 538 P2d 1268, *rev den* (1975) (quoting *Dunne v. McCashum*, 13 Or App 66, 70-71, 508 P2d 821 (1973) (citation omitted)). Incarceration is not just and sufficient cause, on its own, to excuse neglect. *T. G. W.*, 295 Or App at 724. Circumstances justifying a lack of contact with a child may exist where the neglect results from significant restraints imposed by the custodial parent, such as keeping the child's whereabouts secret or vigorously resisting child support or visits. *Panter*, 177 Or App at 594. However, just and sufficient cause requires "a more significant limitation[] imposed on [the parent's] ability to visit or contact [the] child than mere assertions that the custodial parent has made or would make contact with the child difficult." *C. R. H. v. B. F.*, 215 Or App 479, 486, 169 P3d 1286, *rev den*, 343 Or 690 (2007) (internal quotation marks omitted).[4]

---

[4] One of father's probation conditions is not to have contact with minors until he completes an initial assessment with a sex offender treatment program and unless he has prior approval from his probation officer. Although we have previously considered legal prohibition on contact as being just and sufficient cause, father's restrictions on contact became effective in February 2022, after his release from prison. Therefore, father's probation conditions fall outside of the relevant time frame for purposes of determining whether father had just and sufficient cause for neglecting E.

Our caselaw does not "precisely delineate the quantum, or type of neglect which will satisfy the statute." *Brown*, 22 Or App at 224. That said, we have previously excused a parent's neglect in a variety of limited circumstances. *See Eder*, 312 Or at 265 (providing an overview of cases interpreting what constitutes "just and sufficient cause" under ORS 109.324). More specifically, we have previously excused a parent's failure to visit in situations where the custodial parent prevented visitation. *See, e.g., Hairston v. Threets*, 105 Or App 350, 353-55, 804 P2d 1213 (1991); *Brown*, 22 Or App at 225. For instance, the custodial parent in *Hairston* refused to allow the other parent to visit the children unless he paid child support, and also denied him phone contact with the children. 105 Or App at 353-55. We have likewise found it relevant to consider whether a dissolution decree provides visitation rights to the noncustodial parent or requires the noncustodial parent to pay child support. *See Swarthout v. Reeves*, 26 Or App 763, 767, 554 P2d 617 (1976); *Sayre v. Whitehead*, 25 Or App 205, 208, 548 P2d 521 (1976).

We are also mindful of the fact that, in a contested adoption case, the "liberty interest of parenthood *** is at stake. The fact to be established, wilful desertion of, or neglect or failure to support, one's own child without just cause, stigmatizes a parent in a way akin to guilt." *Zockert v. Fanning*, 310 Or 514, 527-28, 800 P2d 773 (1990).

In light of those considerations, we conclude that mother did not satisfy her burden of proof. Although father's incarceration is not alone just and sufficient cause to excuse his neglect of E, father's incarceration combined with mother rebuffing father's attempts to maintain contact with E constitutes just and sufficient cause to excuse father's neglect. As described above, father's ability to communicate during the one-year period with E was limited because he was incarcerated for that year. Father did not have access to the internet, to email, or to video calls. Father's options for communicating with E were therefore reduced to phone calls, letters, and third-party assistance.

Father used all three of his available lines of communication to try to contact mother and E. However, mother

rebuffed all three of father's communication options.[5] As described above, in December 2018, mother asked father not to call her anymore and subsequently she did not answer father's phone calls from prison. Furthermore, although mother did provide a change of address with the post office, she did not inform father of her updated address either time she moved. Thus, once mother's first change of address with the post office expired, father's ability to send letters to E was also cut off.[6] Additionally, mother limited contact with father's mother, Vawter, when she blocked Vawter on Facebook in 2019. Vawter testified that her calls and texts to mother would also go unanswered.

To be sure, many of those actions occurred before the relevant one-year time frame (May 2020 to May 2021), but they nonetheless inform why father failed to demonstrate substantial expressions of concern for E during the one-year period. That is because, to determine whether a parent had just and sufficient cause for neglecting a child, the court must consider all of the circumstances that caused the neglect. *Panter*, 177 Or App at 594. Here, the circumstances that caused father to neglect E include mother's actions to impede father's contact with E, including some events that occurred outside of the relevant one-year period.[7]

We acknowledge that mother had no obligation to maintain contact with father or even to facilitate contact between father and E. The divorce judgment granted full custody to mother and no visitation rights to father. Mother was entirely within her rights to not answer father's phone

---

[5] On appeal, mother argues that she had good cause to impede father's contact with E; mother did not make that argument to the trial court, and the trial court did not make any findings on that issue, so we cannot properly address it on appeal.

[6] When Vawter obtained power of attorney from father in October 2020, Vawter was able to retrieve father's bank statements. Although some of the bank statements Vawter acquired listed mother's Jacksonville address, there is no evidence that Vawter noticed the address and there is also no evidence that she informed father that she had found the address. Therefore, nothing in the record indicates that father was aware of this potential avenue for contacting mother or that he intentionally chose not to pursue it.

[7] To the extent that mother argues that father was required to keep trying to contact E during the one-year period even knowing such efforts would be futile, we reject that argument. Mother has not identified any requirement in statute or caselaw that supports such an argument, nor do we perceive any.

calls or letters. However, mother cannot create the circumstances by which father was unable to successfully maintain contact with E and then use that lack of contact as grounds for seeking to have father's parental rights terminated.

Mother argues that father had other means of attempting to communicate with E. More specifically, mother argues that father could have filed a motion to modify the divorce judgment to seek phone or mail communication with E (as father eventually did once he had court-appointed counsel). While filing a motion in the domestic relations case was one avenue for father to attempt to regain contact with E, father's means of doing so were limited, given his imprisonment and financial circumstances. Furthermore, in previous contested adoption cases where the nonconsenting parent was not granted visitation rights, we have not penalized the nonconsenting parent for failing to file a motion to modify the divorce judgment. *See Swarthout*, 26 Or App at 766-67 (reasoning that a divorce decree that did not provide for visitation constituted a constraint imposed by the custodial parent that established "just and sufficient cause" that excused the nonconsenting parent's failure to visit the child).

In sum, we conclude that mother failed to prove by clear and convincing evidence that father willfully neglected without just and sufficient cause to provide proper care and maintenance for the child for one year before the filing of the petition. Therefore, the court erred in allowing the adoption to proceed without father's consent, and, accordingly, we reverse the trial court's decree of adoption.

Reversed and remanded.