No. 583 July 2, 2025 577

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Adoption of G. C. M. M.,
a minor child.

A. M.-W.
and R. D. W.,
*Petitioners-Respondents,*

*v.*

D. S. H.,
*Respondent-Appellant.*

Josephine County Circuit Court
24AP00044; A184947

Matthew G. Galli, Judge.

Argued and submitted May 28, 2025.

George W. Kelly argued the cause and filed the brief for appellant.

Morgan R. Terhune argued the cause for respondents. Also on the brief was Schulte, Anderson, Downes, Aronson & Bittner, P. C.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

## PAGÁN, J.

In this stepparent adoption proceeding, father appeals a judgment allowing his child, G, to be adopted without father's consent. He assigns error to the trial court's finding that he had willfully neglected, without just and sufficient cause, to provide proper care and maintenance for G for the year preceding mother and stepfather's filing of the petition for adoption. We affirm.

Generally, before a stepparent adoption may proceed, the trial court must determine whether the natural parent consents to relinquishing their parental rights. *Eder v. West*, 312 Or 244, 260, 821 P2d 400 (1991). No consent is required, however, if the parent has willfully deserted or neglected the child without just and sufficient cause. ORS 109.324.[1] If the court finds that the parent has done so, the court must then decide whether adoption is in the best interests of the child. *Eder*, 312 Or at 261.

In determining whether a parent has willfully deserted or neglected the child without just and sufficient cause, the relevant question is:

---

[1] ORS 109.324 provides, in relevant part:

"(1) If a parent is believed to have willfully deserted the child or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, and if the parent does not consent in writing to the adoption, the petitioner, in accordance with ORS 109.330, shall serve on the parent a summons and a motion and order to show cause why the adoption of the child should not be ordered without the parent's consent.

"(2) Upon hearing *** if the court finds that the parent has willfully deserted the child or neglected without just and sufficient cause to provide proper care and maintenance for the child for one year next preceding the filing of the petition for adoption, the consent of the parent at the discretion of the court is not required and, if the court determines that the parent's consent is not required, the court may proceed regardless of the objection of the parent.

"(3) In determining whether the parent has willfully deserted the child or neglected without just and sufficient cause to provide proper care and maintenance for the child, the court may:

"(a) Disregard incidental visitations, communications and contributions; and

"(b) Consider, among other factors the court finds relevant, whether the custodial parent has attempted, without good cause shown, to prevent or to impede contact between the child and the parent whose parental rights would be terminated in an action under this section."

> "During the year preceding the filing of the petition for adoption, did the nonconsenting parent willfully fail to manifest substantial expressions of concern which show that the parent has a deliberate, intentional, and good faith interest in maintaining a parent-child relationship?"

*Id.* at 266. The burden of proof is on the petitioner—here, mother—to demonstrate by clear and convincing evidence that the other parent's consent to the adoption is not required. *Id.* "The ultimate decision must be based on the totality of the evidence," and "[a]ll relevant evidence demonstrating the presence or absence of willful neglect may be considered by the court." *Id.*

On appeal, our review of the record is *de novo*. *J. W. V. v. J. L. W.*, 324 Or App 393, 394-98, 525 P3d 1237 (2023); ORS 19.415(3)(a). The trial court found that both father and mother were not "particularly credible," as they both "said things that were completely contrary to emails they've sent in the past." However, where the parents' testimony diverged, the court made fact findings largely crediting mother's version of events. We give deference to the trial court's credibility findings and state the facts consistently with those findings. *J. W. V.*, 324 Or App at 401.

Mother and stepfather filed the adoption petition on January 19, 2024. Therefore, the primary period of consideration is January 19, 2023, to January 19, 2024. However, we also discuss events that occurred prior to that year, as they inform our analysis and provide context to the relevant year. *See E. A. R. v. R. B. E.*, 327 Or App 614, 615-18, 535 P3d 793, *rev den*, 371 Or 511 (2023) (focusing on the father's contacts with the child during the one-year period preceding the filing of the adoption petition, but also considering events prior to that period as relevant to resolving the arguments on appeal).

Mother and father were married when G was born in 2014. They divorced in 2015. Mother was granted custody of G, and father was given limited supervised visitation rights. Mother testified that father only exercised his visitation rights once, sometime in 2016. In June 2016, father sent mother two emails (that were admitted as exhibits in the adoption proceeding), in which he expressed significant

anger with mother, called her names, and stated that he would take her to court to "get a good parenting plan make you spend lots of money and time then I will never show up to see him."

Father was in and out of jail for the following years, and, in 2018, mother obtained a restraining order against father based on his prior violence toward her and threatening behavior. The restraining order prevented him from contacting her and replaced the previous parenting time order, eliminating father's parenting time with G. In 2018, father was incarcerated in Nevada. The restraining order was renewed in 2019, 2020, 2021, and 2022, and it was eventually continued and modified in August 2023, by which point father had been released from prison and had returned to Oregon. With the modification, the restraining order allowed for contact between father and mother through a third party, such as a professional counselor, attorney, or mediator.

In the fall of 2023, after the restraining order was modified, father made an attempt to initiate visitation with G by contacting two organizations in the area that facilitated supervised visitations. When those organizations contacted mother, she was hesitant to begin visitation until G received counseling, because there had been no contact between father and son for eight years. She testified that she had had G on a waitlist for mental health care since February 2023. No visits had occurred by the time of trial, and father made no other efforts through other third parties to communicate with mother or G.

We conclude that mother and stepfather met their burden of demonstrating by clear and convincing evidence that father willfully deserted or neglected G without just and sufficient cause. In the year prior to the filing of the petition, father had no contact with G—no visits; no letters, cards, or gifts; no phone calls; and no third-party contact through family, friends, or professionals. Father did not pay any child support until after the petition for adoption had been filed. His lack of contact constitutes neglect.

We further conclude the father did not have just and sufficient cause for the neglect, and it was therefore willful.

We acknowledge that for several months of that year, father was still in prison out-of-state. However, "[i]ncarceration is not just and sufficient cause, on its own, to excuse neglect." *E. A. R.*, 327 Or App at 620. Although the record indicates that he maintained some contact with his own mother while he was incarcerated, there is no evidence that he attempted to contact G directly or indirectly while incarcerated. While that time period does weigh in our consideration, in this case the parties have narrowed their focus to the period after father was released. In May 2023, he returned to Oregon.

Although father continued to be subject to the original terms of the restraining order after his release from prison until the August 2023 modification, the record reflects that father and other individuals might have misunderstood the initial terms of the restraining order, in that it did not entirely prevent father from contacting G through third parties, such as father's mother or other family members. We acknowledge that, based on G's young age, establishing contact with him likely might have necessitated going through mother; however, father never attempted to clarify the terms of the restraining order. He also never requested that the restraining order be modified in order to allow him to contact his child, even though he testified that he knew how to request a modification of parenting time prior to doing so in February 2024, after the petition for adoption was filed.

Even after the modification of the restraining order, father's only attempts to contact G were to try to establish supervised visitation. When mother indicated that she was concerned for G's mental well-being at the idea of visitation and wanted him to have counseling first, father made no other attempts to send letters or cards or make phone contact with G, either directly or through mother via any other authorized third-party professional, such as an attorney or mediator, as was specifically allowed in the modified restraining order. We conclude that father's attempt to jump straight to supervised visitation does not constitute a substantial expression of concern showing that he had "a deliberate, intentional, and good faith interest in maintaining a parent-child relationship." *Eder*, 312 Or at 266. We therefore find, by clear and convincing evidence, that father

willfully deserted or neglected G without just and sufficient cause, and that his consent to the adoption was therefore not required.

Because father does not assign error to the court's best interest finding in granting the adoption, we do not discuss it on *de novo* review. We are persuaded that it was in G's best interest that stepfather be permitted to adopt him.

Affirmed.